Frederick G. **WEGSCHEIDER,** et al., Appellants,

v.

**PLASTICS, INC., Respondent.**

No. 49512.

Supreme Court of Minnesota.

Feb. 15, 1980.

Sachs, Latz & Kirshbaum and Mitchel I. Kirshbaum, Minneapolis, for appellants.

Murnane, Murnane, Conlin & White and Robert W. Murnane, St. Paul, for respondent.

Heard before PETERSON, KELLY, and SCOTT, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Plaintiff Frederick Wegscheider was injured March 10, 1970, in a fall from a tanker trailer owned by defendant, Plastics, Inc. Plaintiff sued defendant on the grounds of negligence and strict liability.[1] The case was submitted to the jury on the theory of negligence, with instructions on comparative fault and assumption of risk. The trial court refused to give a requested instruction on strict liability and did not submit that issue to the jury.

In answer to special verdict interrogatories, the jury found that defendant was 90 percent negligent and plaintiff 10 percent negligent but that plaintiff had assumed the risk of his injuries. Because the action arose prior to our decision in *Springrose v. Willmore*, 292 Minn. 23, 192 N.W.2d 826 (1971), the trial court ruled that the finding of assumption of risk barred plaintiff's recovery from defendant. Plaintiff appeals from the order of the trial court denying his alternative motion for judgment notwithstanding the verdict or a new trial. We reverse.

Plaintiff is a truckdriver employed by Space Center, Inc., a trucking firm. He was assigned in 1969 to transport granulated plastic material from railway cars to various locations pursuant to a contract between his employer and defendant. Each morning, upon instructions given by defendant the evening before, plaintiff would use a pump to transfer the plastic from a

1. Defendant, Plastics, Inc., impleaded plaintiff's employer, Space Center, Inc., as a third-party defendant, but the trial court directed a verdict for Space Center, Inc., and that ruling has not been appealed.

specified railroad car to a specified tanker trailer. The tractor used to pull the tanker was owned by plaintiff's employer, but the pump and the tanker were owned and supplied by defendant.

The transfer of plastic was effected by means of a flexible metal chute, weighing 50 to 60 pounds, which connected the pump to the tanker. One end of the chute was permanently affixed to the pump; the other end had to be hoisted manually to the top of the tanker and dropped into a porthole located there. Because it was impossible for a driver to climb the ladder while carrying the chute on his shoulder, the chute was hoisted by means of a clothesline rope after the driver had reached the top of the tanker. The rope was attached to a metal ring on a metal flange at the end of the chute. The driver would carry the rope with him to the top of the tanker and pull the chute up by the rope, hand-over-hand. Defendant was aware of the method by which this task was performed.

Some of the tankers had top platforms which jutted out over the rounded side of the tanker and enabled the driver to hoist the chute vertically, without bumping it into the side of the tanker. Other tankers, however, did not have these platforms, and the driver was forced to stand on the tank itself, straddling the porthole and facing toward the rear. Complicating matters further were stress struts which jutted out about 2 inches at right angles from the side of the tanker. When the chute was hoisted it would necessarily bump against the side of the tanker, and the flange would often catch on the protruding stress struts. The driver would often have to bounce the chute with its metal flange against the side to free it. There was testimony by plaintiff and by a coworker, Dennis Juvland, that the bumping and jarring caused the edges of the struts to become jagged and sharp.

On March 10, 1970, plaintiff was assigned to use a tanker without a platform. While he was hoisting the chute with a rope he had purchased the evening before, the rope broke, and the sudden loss of the heavy chute caused plaintiff to lose his balance and fall off the tanker, fracturing his heels and resulting in permanent partial disability.

There was no direct evidence of the cause of the break in the rope, but Juvland testified that on one occasion before plaintiff's accident the jagged edges of the stress struts had severed his manila rope, causing him to fall off the tanker. Juvland was, however, able to catch himself and was not injured. Juvland informed defendant of this incident and recommended that platforms be put on all tankers, but this was not done. The jury in assessing defendant's negligence apparently believed it was the jagged edge of the struts that severed plaintiff's new rope rather than, as defendant contended, a defect in the rope itself.

1. Plaintiff contends that as a matter of law there was not sufficient evidence to warrant a finding that plaintiff had assumed the risk of his injury. Defendant's twofold response is, first, that plaintiff did not make timely objection at trial to the giving of the assumption of risk instruction and, second, that the evidence was sufficient.

█ It is true that plaintiff participated in the framing of the assumption of risk instruction and interrogatory and did not object to the instruction before it was given to the jury. He did, however, raise the issue of sufficiency of evidence in his posttrial motion for judgment notwithstanding the verdict. The trial court denied plaintiff's motion on the merits. We hold, as in *Evanson v. Jerowski*, 308 Minn. 113, 241 N.W.2d 636 (1976), that an appellant's motion for judgment notwithstanding the verdict on the issue of assumption of risk was timely even though he had failed to object to submission of the issue.

█ We also hold, in agreement with plaintiff, that there was not sufficient evidence to warrant a jury finding of assumption of risk. It is well settled that assumption of risk requires a conscious and voluntary choice to encounter a known and appreciated risk. *Evanson v. Jerowski, supra; Parr v. Hamnes*, 303 Minn. 333, 228

N.W.2d 234 (1975); *Bakhos v. Driver*, 275 N.W.2d 594 (Minn.1979); *Coenen v. Buckman Building Corp.*, 278 Minn. 193, 153 N.W.2d 329 (1967).

We said in *Coenen, supra*, 278 Minn. at 204–05, 153 N.W.2d at 338:

Knowledge of the particular risk or danger and an appreciation of the magnitude thereof are independent and essential elements of the doctrine of assumption of risk. In order to assume the risk of a particular act or condition one must know and appreciate the danger itself and not just the facts which constitute it.

The knowledge required is actual knowledge as distinguished from constructive notice or knowledge. The mere fact that the plaintiff would, in the exercise of ordinary care, have known or appreciated the danger is not sufficient. Where the facts are such that plaintiff must have had knowledge, the situation is equivalent to actual knowledge; but where it merely appears that he should or could have discovered the danger, the defense is contributory negligence and not assumption of risk.

In *Parr*, we held the fact that a danger was in plain view was not by itself sufficient evidence for a jury to infer actual knowledge of the risk; in *Bakhos* knowledge of a general risk was not sufficient evidence of assumption absent knowledge of the particular danger which resulted in the injury.

■ Applying these principles to the instant case, the record is extremely sparse with respect to plaintiff's knowledge of the jagged edges on the truck and that those edges could sever the rope. Although plaintiff had loaded 300 to 400 tankers, he had had no other accidents, and there was no evidence that he had heard of other such accidents. He knew the ropes became frayed, but there is no evidence he knew a new rope (which he was using on the date of the accident) could be severed all at once by jagged edges, and there is no evidence he knew the jagged edges were present on the tanker. The most he knew was that his position on top of the tanker was generally dangerous and that if the rope broke he might lose his balance, but this is no different from the situation of any employee who is compelled by the nature of his job to work from a precarious position. It is clear under our holding in *Bakhos* and *Parr* that this evidence was not enough to establish voluntary assumption of the particular risk, and plaintiff should not have been barred from recovering from defendant.

2. Plaintiff also contends that the trial court erred in refusing his instruction on strict liability. He argues that his only negligence, if any, was failure to inspect the tanker for jagged edges and, therefore, that under our holding in *Busch v. Busch Construction, Inc.*, 262 N.W.2d 377 (Minn. 1977), such negligence would not be compared if defendant were found strictly liable. In *Busch*, we held that while the doctrine of comparative negligence would generally be applied to strict liability actions, it would not be applied where plaintiff's sole contributory negligence was failure to inspect for defects.

■ In the instant case, however, the jury could have found plaintiff's negligence consisted of more than failure to inspect. It could have found he was negligent in using a clothesline to hoist the heavy chute or in continuing to pull upon the chute when he felt the rope scraping against the struts on the tanker. Furthermore, plaintiff's requested instruction consisted of only a basic statement of Restatement (Second) of Torts § 402A. Even if the jury had based its finding of plaintiff's negligence entirely upon failure to inspect, plaintiff did not request an instruction under *Busch* that failure to inspect could not be comparative negligence if the jury found defendant strictly liable. Thus, plaintiff's requested instruction would not have affected the outcome of this case, and the trial court did not commit reversible error by refusing it. We therefore need not address the issue of whether strict liability as stated in § 402A should be applied to cases such as this, where the defective product was not sold but merely supplied by defendant to plaintiff.

Since the issue of assumption of risk was erroneously submitted to the jury, the order denying plaintiff's motion for judgment notwithstanding the verdict is reversed and remanded with instructions to enter judgment in conformity with the jury's finding of damages and comparative negligence.

Reversed in part, affirmed in part, and remanded with instructions.