Gregg E. GRIFFITHS, Respondent,

v.

LOVELETTE TRANSFER COMPANY, INC., et al., Appellants,

Diane C. Bjorkman, et al., Defendants,

Kathleen K. Halimi, et al., Defendants.

LOVELETTE TRANSFER COMPANY, INC. et al., defendants and third party plaintiffs, Appellants,

v.

James D. FRANKLIN, third party defendant, Respondent,

James Raun, third party defendant, Respondent.

No. 81–470.

Supreme Court of Minnesota.

Dec. 17, 1981.

Rider, Bennett, Egan & Arundel, Richard J. Nygaard and Janice K. Cook, Minneapolis, for appellants.

Schwebel, Goetz, Sieben & Hanson and Diane C. Hanson, Minneapolis, for Griffiths.

Arthur, Chapman & Michaelson, Minneapolis, for Bjorkman, et al.

Chadwick, Johnson & Bridell and Wayne D. Tritbough, Minneapolis, Thomas L. Johnson, County Atty., Minneapolis, for Franklin.

TODD, Justice.

Gregg Griffiths, a police officer, came upon an accident scene and while assisting in traffic control, he was injured in a second accident. He brought suit and defendants and third party plaintiffs Lovelette Transfer Company, Inc. and John Charles Lovelette moved for summary judgment on the grounds that the "fireman's rule," which has been extended to police officers, precluded recovery. The trial court denied the motion for summary judgment and certified questions to this court regarding the inter-

pretation of the "fireman's rule" and its application to the facts of this case. We affirm and answer the certified questions.

The parties have stipulated that facts in this case are not in dispute. On June 21, 1977, Gregg Griffiths, a patrolman with the Wayzata Police Department, came upon the scene of an accident at the intersection of Woodhill and County Road 15 in Orono. The accident occurred when John Lovelette, who was driving a jeep owned by Lovelette Transfer Company, Inc., and towing a boat and trailer, lost control of the jeep and swerved off County Road 15 while attempting to avoid hitting a car owned by Gelco Corporation and driven by Diane Bjorkman. The trailer was severed from the jeep and hit a power pole, knocking the upper half of the pole to the ground. A guide wire attached to the pole was lying flat across County Road 15 after the pole fell.

Officer Franklin of the Orono Police Department and Deputy Sheriff Raun of the Hennepin County Sheriff's Office arrived at the accident scene. Northern States Power Company was called to remove the pole and the officers began directing the backed up rush hour traffic through the area. The wire was not electrified and was lying flat, except where it rose to attach to the poles on either side of the road, about halfway across the six foot wide shoulders. The officers therefore allowed the traffic to pass over the wire.

Deputy Raun was east of the downed pole, directing westbound traffic and Officers Griffiths and Franklin were standing near the pole, moving the cars through the accident scene, and interviewing the parties involved in the accident. Kathleen Halimi, driving a Jeep Wagoneer, drove through the area going west. Officer Franklin stated in his deposition that she seemed to be moving too fast. Although the facts are unclear, the Wagoneer apparently went off the road and onto the shoulder, caught the wire on its bumper, causing the severed pole to whip around and knock Officers Griffiths and Franklin and John Lovelette to the ground.

Griffiths and Franklin brought separate actions for injuries sustained. Officer Franklin settled his case before it was brought to trial. At the time of the trial of Griffith's action this court issued its opinion in *Hannah v. Jensen*, applying the fireman's rule to police officers. Based upon that holding, the Lovelette defendants moved for summary judgment. The trial court rejected the argument that Griffith's action was barred, finding that in light of the "unusual sequence of events that occurred in this case," the injury to Officer Griffiths was not, as a matter of law, reasonably apparent within the meaning of the fireman's rule.

The trial court then certified the following questions to this court.

I. Does the "fireman's rule" of *Armstrong v. Mailand*, 284 N.W.2d 343 (Minn.1979) and *Hannah v. Jensen*, 298 N.W.2d 52 (Minn. 1980), apply to police officers who are injured in the course of their duties in conducting an investigation at the scene of an automobile accident?

II. Must the *particular* risk of injury (such as the risk of being struck by a utility pole when a car runs over a guard wire which extends across the road) be reasonably apparent to the police officer in order for the "fireman's rule" to apply, or must only the *general* risk of injury (caused by a motor vehicle while the officer investigates at the scene of an accident) be reasonably apparent to the officer?

III. Is the determination as to whether the risk was reasonably apparent to the officer to be made by the Court or the jury?

■ 1. In the *Armstrong* case this court reaffirmed its approval of the "fireman's rule" and sought to delineate the legal principals involved in the application of the rule. In the *Hannah* case we extended the fireman's rule to police officers. These decisions remain as the applicable law to be applied to the facts of this case.

2. In *Armstrong* this court stated:

Firemen assume, in a primary sense, all risks reasonably apparent to them that are part of firefighting. However, they

do not assume, in a primary sense, risks that are hidden from *or* unanticipated by the fireman. 284 N.W.2d 343, 350 (Minn. 1979). (emphasis supplied).

The Minnesota cases which have discussed the particular vs. general-risk question have defined assumption of the risk as a voluntary encounter with a known risk. *See Wegscheider v. Plastics, Inc.*, 289 N.W.2d 167 (Minn.1980); *Bakhos v. Driver*, 275 N.W.2d 594 (Minn.1979); *Bigham v. J. C. Penney Co.*, 268 N.W.2d 892 (Minn.1978). According to *Armstrong v. Mailand*, that is the definition of secondary assumption of the risk, but both the pre and post *Armstrong* cases have failed to distinguish between primary and secondary assumption of the risk as those terms were defined in *Armstrong*.[1] Nevertheless because the cases cited above involve risks assumed by plaintiffs during the course of their employment, they are an indication that firemen and policemen do not, by accepting dangerous employment, generally assume all risk that may occur. Rather, each situation encountered may involve some risks which are anticipated and assumed and some which are unanticipated and therefore unassumed.

■ The basic premise underlying our decision in *Armstrong* is that the defendant owes a duty to the plaintiff and others. However, where the plaintiff is a policeman or fireman the defendant may be relieved of that duty by reason of the nature of the work performed by policemen and firemen. While police and firemen generally assume the risks inherent in their duties, the particular facts of each case must be examined to determine if the particular risk was either hidden from or unanticipated by the fireman or policeman and therefore not reasonably apparent to the officer.[2]

■ The trial court examined the facts of this unique accident. It concluded that the risk of being struck by a downed utility pole which was jerked into the air when a passing automobile snagged a guide wire attached to the pole was not among the risks to be anticipated by Griffiths as part of his duties. This conclusion is not clearly erroneous.

3. Lovelette contends that the issue of primary assumption of risk as defined under our interpretation of the fireman's rule is not a jury question. They rely on cases and treatises which indicate that in the determination of proximate cause the question of the existence of a duty is always a court question. We do not perceive this to be the question. Here, as we stated above, under the facts of this case, there was a duty existing towards the plaintiff and others. The question is whether the Lovelettes should be relieved of that duty to Griffiths because of his position as a police officer. That in turn raises the question of whether or not the risk was reasonably apparent to Griffiths so that he should have anticipated the danger. The trial court decided as a matter of law that he should not have. It is a close question as to whether this determination should be made as a matter of law but we conclude that this finding is not clearly erroneous. If the trial court had not decided this issue as a matter of law this question could have been submitted to the jury for a factual determination in a special verdict along with other factual determinations relating to negligence, causation, and contributory negligence. The jury should not be informed as to the effect of their answer if they were to determine that it was reasonably apparent to the officer that the particular risk was either not hidden nor should have been anticipated by the officer.

Affirmed.

---

1. In *Bakhos* the voluntary assumption of a known risk was labeled primary assumption of the risk while in *Wegscheider* and *Bigham* it is treated as secondary assumption of the risk although it is simply called assumption of the risk without a distinction being made between primary and secondary.

2. This does not mean that the particular facts that create the risk must be known to the plaintiff if the risk itself is anticipated and apparent. That argument was rejected by this court in *Armstrong v. Mailand*, 284 N.W.2d at 353.