777 P.2d 722

Kevin WINN; Robert Conner; Fred Rice; Stanley Clark; Jerald Ketterling; John D. Fisher and Tina Fisher, husband and wife; Timothy Hatcher and Teresa Hatcher, husband and wife; and Steve Hobbs, Plaintiffs–Respondents,

v.

Donald Ray FRASHER and Helen Frasher, husband and wife; American Farmland, Inc., Defendants–Appellants.

Kevin WINN; Robert Conner; Fred Rice; Stanley Clark; Jerald Ketterling; John D. Fisher and Tina Fisher, husband and wife; Timothy Hatcher and Teresa Hatcher, husband and wife; and Steve Hobbs, Plaintiffs–Respondents,

v.

Donald Ray FRASHER and Helen Frasher, husband and wife; American Farmland, Inc.; David Bremers; Platte Chemical Company, Inc.; Balcom Chemical, Inc.; John Does I–IV, Defendants,

and

Van Leer Container, Inc., Defendant–Appellant.

Kevin WINN; Robert Conner; Fred Rice; Stanley Clark; Jerald Ketterling; John D. Fisher and Tina Fisher, husband and wife; Timothy Hatcher and Teresa Hatcher, husband and wife; and Steve Hobbs, Plaintiffs–Respondents,

v.

Donald Ray FRASHER and Helen Frasher, husband and wife; American Farmland, Inc., David Bremers, Defendants,

and

Platte Chemical Company, Inc., Balcom Chemical Company, Inc., United Agri Products, Inc., Tri River Chemicals, Inc., Uniroyal Chemical Co., Vertac Chemical Co., Defendants–Appellants,

and

John Does I–IV, and Van Leer Containers, Inc., Defendants.

Nos. 17373, 17392 and 17401.

Supreme Court of Idaho.

Feb. 16, 1989.

Rehearing Denied Aug. 28, 1989.

Nelson, Rosholt, Robertson, Tolman & Tucker, Twin Falls, for defendants-appellants, Frashers and American Farmland, Inc. George R. Bevan argued, Twin Falls.

Holden, Kidwell, Hahn & Crapo, Idaho Falls, for defendant-appellant, Van Leer Container, Inc. William D. Faler argued, Idaho Falls.

Benoit, Alexander, Sinclair, Harwood & High, Twin Falls, for all chemical companies and United Agri Products. Robert J. Alexander argued, Twin Falls.

E. Lee Schlender, Chartered, Hailey, for plaintiffs-respondents, Winn, Conner, Rice, Clark, Hobbs and Ketterling. E. Lee Schlender argued, Hailey.

Penelope Parker–Kimber, Twin Falls, for plaintiffs-respondents, Fishers and Hatchers.

JOHNSON, Justice.

This is a personal injury action. The trial court denied a motion for summary judgment of the defendants on the ground that the so-called "fireman's rule" does not exist in this state. We disagree and reverse and remand.

## I.

## THE UNUSUAL POSTURE OF THIS CASE AND OUR NARROW APPROACH IN THIS OPINION.

This appeal is before us in an unusual posture. The decision of the trial court that is on appeal is a denial of a motion for summary judgment. Ordinarily, this is not an appealable order. However, the trial court certified this case to us as an interlocutory appeal pursuant to I.A.R. 12(c)(2). We granted permission for these appeals under this rule. We took this unusual action because we viewed the question presented by the motion for summary judgment and the trial court's decision as one of first impression that would be controlling in this case. We concluded that these appeals would advance the orderly resolution of the litigation. *Cf. Budell v. Todd*, 105 Idaho 2, 665 P.2d 701 (1983).

Because of the unusual posture of the case, we are constrained to rule narrowly and address only the precise question that was framed by the motion and answered by the trial court. Upon remand there will be many new questions to be addressed by the parties and the trial court. We do not intend to imply by our decision today what the answers to those questions are, or what the result of the litigation will be. We intend only to answer the question framed by the motion and answered by the trial court.

## II.

## THE ONLY QUESTION PRESENTED HERE IS WHETHER THE FIREMAN'S RULE EXISTS IN THIS STATE.

The motion for summary judgment of the defendants was "made on the ground that plaintiff's action is barred by the so-called 'fireman's rule,' which provides that neither a fireman nor a policeman may recover in tort when his injuries are caused by the same conduct that required his official presence." In ruling on this motion the trial court ruled "that the so-called 'fireman's rule' is inoperative in the State of Idaho." It is to this question only that we will address ourselves.

## III.

## THE FACTUAL BACKGROUND ACCEPTED BY THE TRIAL COURT.

In the decision of the trial court on the motion, the trial court set forth findings of fact. Findings of fact are not necessary in decisions on motions for summary judgment. I.R.C.P. 52(a). For the purposes of this opinion, we consider that the findings of fact contained in the trial court's decision constituted the factual background accepted by the trial court in answering the question framed by the motion. We do not intend by reciting these facts to indicate that we approve them. We only restate them here as a basis for understanding the context in which the question presented here arose. The trial court made the following findings of fact:

### FINDINGS OF FACT

On April 11, 1985, a truck contracted through defendant American Farmland, Inc., and driven by defendant Donald Frasher, stopped in Rupert, Idaho in route to Walla Walla, Washington, where they were to deliver a load of potato defoliant chemical which they were hauling. The chemical was manufactured by the various chemical company defendants herein and was packaged in containers provided by Van Leer Containers, Inc. The Frashers stopped at the Wayside Cafe in Rupert, Idaho, and Mr. Frasher proceeded to inspect the truck as was his custom. In so doing, he noticed that some of the chemical which he was

502

hauling had leaked into the back of the truck. He then proceeded, upon directions from his dispatcher, to a nearby carwash and washed the material out of the truck.

While at the carwash, and after having completed washing out the truck, Mr. Frasher was approached by Officer Stanley Clark, one of the plaintiffs herein. Officer Clark questioned Mr. Frasher as to the purpose for his presence at the carwash. Mr. Frasher then explained that a small amount of chemical had spilled in his truck and that he had washed it out. He showed Officer Clark a copy of the bill of lading which identified the substance as substituted nitrophenol pesticide liquid NOS FLAMABLE LIQUID (poison) UN2780 (dinitro 3–B).

Officer Clark then left the carwash and Mr. Frasher drove his truck back to the Wayside Cafe. Each of the above-named plaintiffs subsequently responded to the spill while on duty as paid public safety officers in the employ of Rupert City, Minidoka County, or the State of Idaho. The officers returned to the carwash looking for Mr. Frasher and subsequently found him at the Wayside Cafe, whereupon they proceeded to secure the area in order to protect the public from the effects of the chemical spill.

The five consolidated cases for purposes of this Motion include eight plaintiffs. They are:

Stanley Clark: Police Officer, City of Rupert

Robert Conner: Patrolman, Idaho State Police

Jerald Ketterling: Deputy Sheriff, Minidoka County

Fred Rice: Patrolman, Idaho State Police

Kevin Winn: Patrolman, Idaho State Police

Timothy Hatcher: Sheriff's Officer, Minidoka County

John Fisher: Lieutenant, Minidoka County Sheriff's Office

Steven Hobbs: Officer, Rupert City Police

These officers then brought the various lawsuits referred to above against the defendants herein, for injuries which they allegedly suffered as a result of exposure to the chemical on April 11, 1985. Any such injuries arose in the course of and during the scope of the officers' employment as paid public safety officials.

IV.

THE FIREMAN'S RULE EXISTS IN IDAHO.

The defendants have cited cases from several other states that have accepted the fireman's rule. Apparently, Oregon is the only state that has recently considered the rule and has rejected it. *Christensen v. Murphy*, 296 Or. 610, 678 P.2d 1210 (1984). While we are not inclined to "nose count" how many other jurisdictions have accepted a particular rule of law as a means of deciding whether it will apply in this state, we are impressed that the great majority of states accept the rule. We note, however, little consistency from state to state in the basis for the acceptance of the rule. Some find the rationale for the rule in the treatment of firemen and policemen as licensees to whom landowners owe only the duty not to act wilfully or wantonly. Others have extended this form of the rule to off-premises situations. Still others have predicated their version of the rule on assumption of the risk, usually in the "primary sense," *i.e.*, that the party whose liability is alleged had no duty to the fireman. The more recent and persuasive cases treat the rule as being compelled by public policy. We find this last rationale to be the most appropriate for our consideration.

We note with interest that almost 60 years ago this Court handed down a decision concerning the duty of a landowner to a policeman who came on the landowner's land in the performance of the policeman's duty and was injured because of the condition of the land. *Pincock v. McCoy*, 48 Idaho 227, 281 P. 371 (1929). We find this case to be of no real assistance to us in deciding the question presented here. *Pin-*

*cock* deals only with the duty to a licensee and not with the broader issue which the fireman's rule addresses. Because of the narrow focus of this opinion, we decline to address the current vitality of the rule stated in *Pincock*.

Defendants have suggested that we use assumption of the risk in the "primary sense" as the basis for our acceptance of the fireman's rule, despite the general rejection of assumption of the risk as a defense in *Salinas v. Vierstra*, 107 Idaho 984, 695 P.2d 369 (1985). We note with interest that the special concurrence of Justice Spear in *Fawcett v. Irby*, 92 Idaho 48, 54–6, 436 P.2d 714, 720–21 (1968), that was relied upon by Justice Bistline in *Salinas*, (107 Idaho at 988, 990, 695 P.2d 369), carefully distinguished assumption of the risk in the "primary sense" from assumption of the risk in the "secondary sense," *i.e.*, as a form of contributory negligence. Our reading of *Salinas* convinces us, however, that any implied rejection of assumption of the risk in the "primary sense" by the majority there was only *dicta*. The facts of *Salinas* were appropriate for the application of assumption of the risk in the "secondary sense" only. We do not, therefore, feel bound not to consider whether *Salinas* declared assumption of the risk in the "primary sense" no longer viable. Nevertheless, we decline to premise our decision here upon such a nebulous and confounded concept.

We are persuaded that public policy is the appropriate ground for us to consider whether the fireman's rule should apply in Idaho. In doing so we realize that we are involved in the development of the common law in this state in the way Oliver Wendell Holmes, Jr. referred to the process when he said:

> The life of the law has not been logic; it has been experience. The felt necessities of the time, the prevalent moral and political theories, intuition of public policy, avowed or unconscious, even the prejudices which judges share with their fellow-men, have had a good deal more to do than the syllogism in determining the rules by which men should be governed.

O.W. Holmes, Jr., *The Common Law* 1 (1881).

We find persuasive the policy considerations stated by the Michigan Supreme Court in a recent opinion:

> The policy arguments for adopting a fireman's rule stem from the nature of the service provided by fire fighters and police officers, as well as the relationship between these safety officers and the public they are employed to protect.
>
> It is beyond peradventure that the maintenance of organized society requires the presence and protection of fire fighters and police officers. The fact is that situations requiring their presence are as inevitable as anything in life can be. It is apparent that these officers are employed for the benefit of society in general, and for people involved in circumstances requiring their presence in particular.
>
> .    .    .    .    .
>
> The public hires, trains, and compensates fire fighters and police officers to deal with dangerous, but inevitable situations. Usually, especially with fires, negligence causes the occasion for the safety officer's presence.
>
> .    .    .    .    .
>
> The very nature of police work and fire fighting is to confront danger. The purpose of these professions is to protect the public. It is this relationship between police officers, fire fighters, and society which distinguishes safety officers from other employees. Thus, safety officers are not "second-class citizens," but, rather, are "different" than other employees.

*Kreski v. Modern Wholesale Electric Supply*, 429 Mich. 347, 415 N.W.2d 178, 186–87 (1987).

For similar policy reasons, we declare that the fireman's rule applies in Idaho. By this declaration we do not, however, intend to indicate that the plaintiffs are barred from recovery in this case. The outcome of this case must be determined by the litigation of the remaining issues before the trial court, including whether

the fireman's rule will ultimately be held to prevent recovery by the plaintiffs. These questions we leave to the parties and the trial court to resolve upon remand.

## V.

## CONCLUSION.

We declare that the fireman's rule is in effect in Idaho. We reverse the order of the trial court denying the motion for summary judgment of the defendants and remand the case for further proceedings in light of this opinion.

Costs to appellants. No attorney fees were requested.

SHEPARD, C.J., and HUNTLEY, J., concur.

BISTLINE, Justice, specially concurring.

My initial impulse is to dissent on the basis that establishment of the fireman's rule is a matter for the legislature. However, if a majority sees fit to adopt a rule that "neither a fireman nor a policeman may recover in tort when his injuries are caused by the same conduct that required his official presence," maj. op., at p. 501, 777 P.2d at p. 723, I suggest that meat be added to this bare bones statement of the rule.

Fortunately, at least some of the desired flesh is supplied by the same Michigan Supreme Court opinion cited and relied upon by the majority, *Kreski v. Modern Wholesale Electric Supply,* 429 Mich. 347, 415 N.W.2d 178 (1987):

> As a result of examining the policy rationales supporting the fireman's rule, we are persuaded that considerations of fairness and public policy compel us to adopt the rule for Michigan. However, we must clarify that we are not attempting to delineate the precise parameters of the rule in this opinion. Several exceptions involving factual situations not presented here have developed in the states employing a fireman's rule.
>
> For example, the alleged acts and omissions in the instant cases all oc-

curred prior to plaintiffs' arrivals. There are no allegations of wrongdoing or negligence after plaintiffs were on the scene. Further, neither plaintiff has alleged negligence rising to the level of wilful, wanton, or intentional misconduct. In both cases, the incidents took place when the premises were closed. Therefore, we are not presented with a situation in which the injuries occurred when the buildings were open to the public for business.

Next, the building owners or occupiers were not on the premises at the time of the incidents, or even alleged to have known of plaintiffs' presence. Thus, there are no allegations that the owners misled plaintiffs regarding the condition of the buildings or the nature of the activities carried on inside. Similarly, there is no allegation that defendants had a present ability to warn of danger on the premises. Neither are there allegations that the fire in *Kreski* was intentionally set or was the product of illegal activities.

\* \* \* \* \* \*

Thus, as a matter of public policy, we hold that fire fighters or police officers may not recover for injuries occasioned by the negligence which caused their presence on the premises in their professional capacities. This includes injuries arising from the normal, inherent, and foreseeable risks of the chosen profession.

*Kreski,* 415 N.W.2d at 188–89.

ARCHER, Justice (concurring).

I signed the majority opinion and concur because it does not foreclose fire fighters and police officers from bringing a cause of action which includes but is not limited to allegations of wrongdoing or negligence after they are on the scene; alleged negligence rising to the level of wilful, wanton, or intentional misconduct; a situation in which injuries occurred when the buildings were open to the public for business; allegations that the owners misled the plaintiffs regarding the condition of the buildings or the nature of the activities carried on

inside; allegations that defendants had a present ability to warn of dangers on the premises; or allegations that defendants intentionally set a fire or that the fire was a product of illegal activity. *Kreski,* 415 N.W.2d at 192–93.

These additional comments on situations where the rule might not apply are tendered as an attempt at giving necessary guidance to the trial court in proceedings on remand. I.C. § 1–205.

There is no suggestion that the comments are all-inclusive. It would seem that where the Court is willing to legislate a fireman's rule into existence, it should assume the obligation to further spell out the parameters of the rule and exceptions thereto. Being but one of five, I am not the Court.

HUNTLEY, Justice, concurring.

I write only to comment that the case law throughout the United States establishes that most jurisdictions which have the "fireman's rule" properly recognize a number of exceptions thereto. The trial court on remand is free to, and should, determine whether any of the exceptions apply to this case.

Some of the exceptions are catalogued in the authorities on pages 39 to 42 of respondents' brief herein, which are attached hereto as Appendix A.

## APPENDIX A

### VI.

EVEN IF THE FIREMAN'S RULE APPLIES, ITS APPLICATION IS NARROW IN SCOPE AND NOT EQUALLY APPLICABLE TO ALL DEFENDANTS.

The case law is clear, even if adopted, the Fireman's Rule is not a total bar to all causes of action. In *Pincock, supra,* as noted in section II, *supra,* the court did not hold that the application of the Fireman's Rule was a complete bar, but rather held that as applied to on-premises injuries, the defendant had a duty to refrain from infliction of willful or intentional injury.

In an effort to abrogate or minimize the effects of the Fireman's Rule, courts have developed numerous exceptions to the rule. In Minnesota, the Fireman's Rule is inapplicable if the defendant failed to warn the public safety officer of hidden dangers of which the defendant had knowledge and the opportunity to disclose. *Shypulski v. Waldorf Paper Products Co.,* 232 Minn. 394, 45 N.W.2d 549 (1951). Approximately 30 years later, the Minnesota court held in *Armstrong v. Mailand,* 284 N.W.2d 343 (1979), that public service officers are owed a duty of reasonable care unless they assume the risk in the primary sense. They assume, in the primary sense, all the *reasonably apparent* risks of fire fighting or police work. They do not, however, assume risks that are hidden or unanticipated.

In *Griffiths v. Lovelette Transfer Co.,* 313 N.W.2d 602 (Minn.1981), the court held firemen and policemen do not generally assume all risks that may occur while they are on duty, but that each situation encountered "may involve some risks which are anticipated and assumed and some which are unanticipated" and therefore unassumed. *Id.,* at 605. The court stated that in each case *the facts* "must be examined to determine if the particular risk was either hidden from or unanticipated by the officer and therefore not reasonably apparent to the office." *Id.*

Finally, the court held that the question of whether a particular risk is reasonably apparent to the plaintiff should be submitted to the jury in cases in which the court does not decide the question as a matter of law. *Id.* In essence, the court said that, as in a motion for summary judgment, if no material issue of fact is presented the trial court may decide the issue as a matter of law and summary judgment may be granted, but if there is a factual dispute the question should be submitted to the jury. *Id.*

Most recently, in *Lang v. Glusica,* 393 N.W.2d 181 (Minn.1986), the Minnesota Supreme Court held that the Fireman's Rule does not prevent recovery by a fire fighter or a police officer against a defendant who

**506**

intentionally injures the safety officer or causes injury by active negligence after the officer arrives on the scene.

The Illinois Supreme Court declined to extend the Fireman's Rule to a manufacturer and an installer of a defective product. In *Court v. Gizelinski*, [Grzelinski], 72 Ill.2d 141 [19 Ill.Dec. 617], 379 N.E.2d 281 (1978), the plaintiff, a fireman, was injured while fighting a fire that had erupted in a vehicle. An explosion ignited gasoline and caused it to shoot up from the car onto the plaintiff. The fireman brought an action against the manufacturer of the gas tank and the used car dealer who had installed the tank in the car. The plaintiff alleged that the tank was defective and that the dealer had installed it in a defective manner. In refusing to allow the Fireman's Rule to bar recovery against the defendants, the court noted that the Fireman's Rule was based upon certain policy considerations limiting the liability of landowners. It stated:

> Defendants attempt to extend the "Fireman's Rule" beyond its limited context of landowner/occupier liability. The rule cannot be extended to a free-floating proposition that a fireman cannot recover for injuries resulting from risks inherently involved in fire fighting.... In products liability actions such as this, assumption of risk is a bar to recovery only if the plaintiff is aware of the product defect and voluntarily proceeds in disregard to the known danger. In either case, assumption of risk is an affirmative defense interposed against a plaintiff who voluntarily exposes himself to a specific, known risk, not a preclusion of recovery against a plaintiff whose occupation inherently involves general risks of injury.
> [19 Ill.Dec. at 617] 379 N.W.2d [N.E.2d] at 284.

In light of the strong public policy favoring recovery in products liability cases, the foreseeability of harm to the plaintiffs, and the generally harsh results of allowing a total defense, the court should not extend the Fireman's Rule to bar recovery against the manufacturer chain.

In *Mahoney v. Carus Chemical Co.*, [102 N.J. 564], 510 A.2d 4 (N.J.1986), the New Jersey Supreme Court held that the Fireman's Rule does not protect a supplier guilty of willful, wanton misconduct.

In *Scheurer v. Trustees of the Open Bible Church, supra*, [175 Ohio St. 163, 192 N.E.2d 38 (1963)], the court held that an officer could recover only when the defendant's willful or wanton misconduct, active negligence or violation of a statutory duty caused the officer's injuries.

In *Pallikan v. Mark, supra*, [163 Ind. App. 178, 322 N.E.2d 398 (1975)], the Indiana court held that an owner owes a public service officer a duty to abstain from a positive wrongful act. In Georgia, the court in *London Iron & Metal Co. v. Abney, supra*, [245 Ga. 759, 267 S.E.2d 214 (1980)], held that an owner owes a duty to warn or protect a public service officer against hidden perils.

In *Lipson v. Superior Court*, 31 Cal.3d 362 [182 Cal.Rptr. 629], 644 P.2d 822 (1982), the court held that a fire fighter can recover for an owner's independent act of misrepresentation.

In *Cameron v. Abatiell*, 127 Vt. 111, 241 A.2d 310 (1968), a landowner was held to the duty to make premises safe for police officer's purposes.

McDERMOTT, Judge Pro Tem., dissenting.

The policemen and firemen of this state are public employees, paid for and trained at public expense. They must respond to various and different calls when requested to do so by the public and sometimes are confronted with very dangerous and unexpected situations wherein they could possibly be injured or killed. Their primary duty and responsibility is to, at all times, conduct themselves in a very professional and competent manner and to protect the public and property.

The majority of the Court is of the opinion that the fireman's rule shall hereafter be in effect in the state of Idaho, "as being compelled by public policy."

Given the significant ramifications to the policemen and firemen of this state in the event a fireman's rule is adopted, I am of the opinion, if public policy demands such a rule be implemented, that the proper body to enact such a rule would be the Idaho State Legislature.