## 76161. BYCOM CORPORATION v. WHITE et al.
(371 SE2d 233)

BENHAM, Judge.

The basic subject of this appeal is the scope of the Fireman's Rule; specifically, whether it applies in a case in which the defendant is not the owner or occupier of the premises where the injury to the plaintiff occurred. The appellees are a husband and wife, the husband a DeKalb County fireman who was seriously burned by exploding natural gas. Appellant is the corporation whose agents were allegedly negligent in rupturing a natural gas pipeline and in failing to indicate the location of the leak to the firemen who responded to a call that a gas leak had occurred. We granted appellant's application for an interlocutory appeal to review the trial court's denial of that portion of appellant's motion for summary judgment based on the Fireman's Rule.

The facts of this case are essentially undisputed. Appellant's agents ruptured a natural gas pipeline. Although they reported the occurrence to the Atlanta Gas Light Company, they did not report it to governmental authorities. However, the principal of a nearby school reported the leak after being told of it by a parent. A fire truck was dispatched to deal with the leak, but the location given it was that of the school, several blocks from the site of the actual leak. A school crossing guard pointed in the direction of the leak when the truck arrived at the location given it, and the truck continued on in the indicated direction. The truck stopped at the site of the leak, and White debarked from the truck, apparently believing the leak to be on an adjoining cul-de-sac. In fact, the leak was beneath the truck

and the gas caught fire shortly after White left the truck.

1. The Fireman's Rule was recognized in Georgia in *Ingram v. Peachtree South*, 182 Ga. App. 367, 368 (355 SE2d 717) (1987): "Basically, the principle is that while a fireman may recover for negligence independent of the fire, a landowner is not liable for negligence in causing the fire. As an oft-cited case holds, one 'cannot complain of negligence in the creation of the very occasion for his engagement.' [Cit.]" That rule, stated in terms of a landowner's liability, was perfectly adequate for that case since the fire there occurred on premises owned by the defendant. In the present case, however, the alleged negligence and the injury occurred off the premises of the alleged tortfeasor.

"Because we are bound by the case law set out in [*Ingram*] as to on-premises injuries, and because it would create a dichotomy to establish policies which deny recovery to a fireman injured on-premises but allow recovery to a fireman injured off-premises, the fireman's rule must be applied to off-premises injuries sustained by firemen acting in their professional capacity. Just as the fireman who as a licensee and barring actual wrongful acts by the landowner 'takes all risks as to the safe condition of the premises upon which he enters,' [cit.], so the fireman incurs the risks inherent in the situation when he undertakes an off-premises [emergency call] in his official capacity." *Koehn v. Devereaux*, 495 NE2d 211, 215 (Ind. App. 3 Dist. 1986). It is necessary, therefore, to examine two alternative bases which have been used as support for the Fireman's Rule: assumption of risk and public policy.

Both of those rationales are cogently explained in a 1985 decision from the Court of Special Appeals of Maryland, *Flowers v. Sting Security*, 62 Md. App. 116 (488 A2d 523 532) (1985): "The major modern justification for the Fireman's Rule is based upon the notion of assumption of risk . . . Within the context of serving as the primary basis for the Fireman's Rule, the notion of assumption of risk is used in a very special sense. It is necessary to distinguish between a 'primary' assumption of risk, which arises out of the special relationship between the firefighter and the public, and a 'secondary' assumption of risk, which is an affirmative defense on a case-by-case basis and which closely resembles contributory negligence . . . Perhaps the leading statement on the Fireman's Rule generally and on the special sense in which the notion of 'assumption of risk' is used specifically, was that by Chief Justice Joseph Weintraub in *Krauth v. Geller*, 31 N. J. 270, 157 A.2d 129, 130-131 (1960): 'The rationale for the prevailing rule is sometimes stated in terms of "assumption of risk," used doubtless in the so-called "primary" sense of the term and meaning that the defendant did not breach a duty owed, rather than that the fireman was guilty of contributory fault in responding to his public

duty.' . . . A fireman does not assume a risk in the secondary sense, hazard by hazard and fire by fire, and only when he lacks a safer alternative, but in the broad, primary sense as an inherent incident of his occupation . . . Closely intertwined with the primary assumption of risk rationale, and strongly supporting it, but with an independent content of its own is the public policy rationale. That rationale, in a nutshell [has been] articulated [as follows]: 'A public safety officer cannot base a tort claim upon damage caused by the very risk that he is paid to encounter and with which he is trained to cope. . . . Such officers, in accepting the salary and fringe benefits offered for the job, assume all normal risks inherent in the employment as a matter of law and thus may not recover from one who negligently creates such risk.' . . . The Fireman's Rule, almost universally accepted and nowhere rejected constitutionally, stands for the principle that societal responsibility rather than possible tort recovery is the better, surer, and fairer recourse for a fireman or policeman injured in the line of duty . . . The most forceful statement of the public policy rationale for the Fireman's Rule was probably that of Chief Justice Weintraub in *Krauth v. Geller*, supra: '(I)t is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said that there is none owed the fireman to exercise care so as not to require the services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injury suffered by the expert retained with the public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling.' "

In adopting the Fireman's Rule, the Supreme Court of Iowa set out its public policy considerations: "[S]ince government entities employ and train firefighters and policemen, at least in part, to deal with those hazards that may result from the actions or inaction of an uncircumspect citizenry, it offends public policy to say that a citizen invites private liability merely because he happens to create a need for those public services. [Cit.] Citizens should be encouraged and not in any way discouraged from relying on those public employees who have been specially trained and paid to deal with these hazards. Additionally, a citizen does not have the right to exclude public safety officers from emergency situations or to control their actions once they have been alerted to an emergency and arrive on the scene. Indeed, a

citizen may have a legal duty to summon a public safety officer in some instances and to say he may, in the course of discharging that duty, risk tort liability to officers who are specially trained and hired to cope with these hazards, strikes us as inconsistent and unfair. Finally, although we are aware of the widespread existence of liability insurance, we believe these risks are more effectively and fairly spread by passing them onto the public through the government entities that employ firefighters and police officers." *Pottebaum v. Hinds*, 347 NW2d 642, 645 (Iowa 1984).

We are persuaded by the considerations mentioned above that the public policy of the State of Georgia requires adoption of a Fireman's Rule in Georgia broader than that stated in *Ingram*. Paraphrasing the language of the Supreme Court of Kansas in *Calvert v. Garvey Elevators*, 236 Kan. 570 (694 P2d 433) (1985), we now hold that it is a public policy of the State of Georgia that a public safety employee cannot recover for injuries caused by the very negligence that initially required his presence in an official capacity and subjected the public safety employee to harm; that public policy precludes recovery against an individual whose negligence created a need for the presence of the public safety employee at the scene in his professional capacity.

"This is not to say that firemen or police officers are barred from recovery in all instances in which they are injured by negligent acts. The relevant inquiry is whether the negligently created risk which resulted in the fireman's or policeman's injury was the very reason for his presence on the scene in his professional capacity. If the answer is yes, then recovery is barred; if no, recovery may be had." *Pottebaum v. Hinds*, supra at 646. Furthermore, it is important to note that our holding in this case addresses only the initial negligence which requires the public safety employee's presence in his official capacity. We make no rule in this case concerning liability for subsequent acts of negligence or for intentional wrongdoing.

In opposition to the adoption of a broader rule than that stated in *Ingram*, appellees rely on *Walker Hauling Co. v. Johnson*, 110 Ga. App. 620 (139 SE2d 496) (1964), for the proposition that a fireman has a right to sue anyone other than the owner or occupier of land. However, this court made clear in that case that it was not making the assumption that the plaintiff was a "fireman," just someone skilled in fighting fires who volunteered to help. Contrary to appellees' argument, this court did base its decision on the plaintiff's status as a volunteer, fitting the case into the rescue doctrine. The Fireman's Rule is an exception to the rescue doctrine. *Koehn*, supra. We find *Walker Hauling* to be no impediment to the establishment of the rule we announce in this case.

Appellees argue that although recovery for appellant's negligence

in creating the gas leak may be barred to appellees by adoption of a broader version of the Fireman's Rule, even the expanded rule would not bar their action based on appellant's negligence in failing to warn the firemen of the location of the leak. We disagree. The conduct on which appellees base their second allegation of negligence is the same conduct on which they base their first allegation. Appellant created a risk of fire and explosion by rupturing a gas pipe and then got out of the area. That is the only conduct upon which both allegations of negligence are premised. There is no assertion that appellant did anything to conceal the leak or to prevent its detection or did anything to increase the danger of fire or explosion. Under the allegations of the complaint in this case, appellees are barred from asserting a claim against appellant. It follows that the trial court erred in denying appellant's motion for summary judgment.

2. Since our holding requires the entry of summary judgment for appellant, other issues raised on appeal are moot and need not be addressed.

*Judgment reversed. McMurray, P. J., and Pope, J., concur.*

DECIDED JUNE 23, 1988 —
REHEARING DENIED JULY 8, 1988 —

*R. Chris Irwin, Kathleen M. Pacious*, for appellant.
*Andrew M. Scherffius, Edward R. Still, Charles B. Merrill, Jr.*, for appellees.