**Willis A. WHITE, Linda White, Plaintiffs–Appellants,**

v.

**David EDMOND, Irene Edmond, Vnac, Defendants–Appellees.**

No. 91–8903.

United States Court of Appeals, Eleventh Circuit.

Sept. 4, 1992.

Ronald Bruce Warren, Thomasville, Ga., for plaintiffs-appellants.

F. Carlton King, Jr., Chad A. Schultz, Atlanta, Ga., for defendants-appellees.

Before BIRCH, Circuit Judge, JOHNSON *, and BOWNES **, Senior Circuit Judges.

BOWNES, Senior Circuit Judge:

This is an appeal from summary judgment that raises the issue of the scope of the "Fireman's Rule" under Georgia law. Appellant Willis A. White ("White"), a fireman, brought this action against appellee Volvo North America Corporation ("Volvo NAC"), an automobile manufacturer.[1] White alleged that he was injured while fighting a fire at a residential house as a result of the explosion of part of a Volvo automobile, which was parked in a burning garage adjoining the house. White sued Volvo NAC for negligence in the manufacture of the automobile part that exploded. The United States District Court for the Middle District of Georgia determined that Volvo NAC was entitled to summary judgment as a matter of law under the Fireman's Rule. It found that as a fireman, White knowingly and voluntarily assumed all risks normally associated with fighting fires, including the explosion of part of the Volvo automobile. White now appeals,[2] and we affirm.

## FACTS AND STANDARD OF REVIEW

The facts of this case are essentially undisputed. On March 25, 1990, White's volunteer firefighting unit was called to a fire at the home of David and Irene Edmond. When White arrived at the Edmond's property, the house was completely engulfed in flames. The blaze had already destroyed the entire house and its contents, including the 1988 Volvo automobile that was parked in a carport adjoining the house. The Volvo's gas tank had exploded prior to White's arrival.

While White was fighting the fire in the garage/carport area, the Volvo automobile again exploded. White's legs were injured

---

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Hugh H. Bownes, Senior U.S. Circuit Judge for the First Circuit, sitting by designation.

1. White's personal injury action was first brought in superior court in Decatur County, Georgia. The original complaint listed White and his wife as co-plaintiffs and named Volvo, Volvo North America Corporation ("Volvo NAC"), and the owners of the residential home as co-defendants. White's wife, Linda White, claimed loss of consortium in the same suit. In May 1991 a consent order was entered dismiss-ing as defendants the owners of the residential home. Volvo NAC successfully sought removal to the United States District Court for the Middle District of Georgia, based on diversity of citizenship.

2. Linda White has not appealed the district court's order granting summary judgment for Volvo NAC on her loss of consortium claim. Accordingly, Willis White is the only appellant. In addition, while both Volvo and Volvo NAC were co-defendants in the original action, for purposes of summary judgment and this appeal, Volvo NAC is the only appellee.

as a result of being struck by metal fragments that were propelled from the Volvo when the shock absorbers used to attach the bumpers to the car exploded. Both White and Volvo NAC agree that the Volvo's bumper was blown off the car by the force of the explosion, although Volvo NAC disputes White's assertion that the bumper was blown "through the carport wall."

White alleged that his injuries were the result of a defect in the 1988 Volvo automobile. He also alleged that Volvo NAC was negligent in the manufacture, inspection and distribution of the automobile, because the bumper and bumper shock absorber exploded in the course of the fire. Volvo NAC argued, and the district court agreed, that summary judgment was required under the Fireman's Rule as a matter of law. There was, therefore, no determination of the negligence issue.

As this is an appeal of a district court's grant of summary judgment, our review of the legal determinations below is *de novo*. *See, e.g., United States v. Fleet Factors Corp.*, 901 F.2d 1550, 1553 (11th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 752, 112 L.Ed.2d 772 (1991). We must, however, " 'resolve all reasonable doubts about the facts in favor of the non-movant.' " *See Browning v. Peyton*, 918 F.2d 1516, 1519–20 (11th Cir.1990) (quoting *Tackitt v. Prudential Ins. Co. of Am.*, 758 F.2d 1572, 1574 (11th Cir.1985)).

## DISCUSSION

### I.

The parties have treated Georgia law as controlling in both the district court and on appeal. The district court assumed Georgia law applied when it determined in its summary judgment ruling that the Fireman's Rule was a valid defense to White's suit against Volvo NAC. We, therefore, apply Georgia law in our *de novo* review of the district court's grant of summary judgment. *See, e.g., Jefferson Pilot Broadcasting Co. v. Hilary & Hogan, Inc.*, 617 F.2d 133, 135 (5th Cir.1980) (following parties' assumption as to controlling law); *see also*

*Black Warrior Elec. Membership Corp. v. Mississippi Power Co.*, 413 F.2d 1221, 1223 n. 5 (5th Cir.1969) (same principle).

Because Georgia law is controlling,

[W]e must interpret the law as would a Georgia court. Even "[i]n the absence of controlling precedent, we must nonetheless decide ... issue[s] as we believe a [Georgia] court would decide [them] ..." In the absence of evidence to the contrary, we presume that the Georgia court would adopt the prevailing rule if called upon to do so.

*Wammock v. Celotex Corp.*, 835 F.2d 818, 820 (11th Cir.1988) (citations and footnotes omitted).

The Fireman's Rule has a relatively short pedigree in Georgia case law. The doctrine was first applied under Georgia law by the United States District Court for the Middle District of Georgia. *See Brown v. General Elec. Corp.*, 648 F.Supp. 470 (M.D.Ga. 1986). In *Brown*, an injured fireman brought a suit for negligence and products liability against the manufacturer of a coffee maker that was allegedly the initiating cause of the fire that caused the plaintiff's injury. *Id.* at 471. After review of Georgia law, the district court concluded that the Supreme Court of Georgia would adopt the Fireman's Rule because of the continued viability of the doctrine of assumption of risk in Georgia. *Id.* In finding that the Fireman's Rule barred the plaintiff's claims as a matter of law, the district court employed the formulation of the rule furnished by the Maryland Court of Special Appeals: " 'Other jurisdictions are almost unanimous in denying recovery by an injured fireman from one whose sole connection with the injury is that his negligence caused the fire.' " *Id.* (citing *Flowers v. Sting Sec., Inc.*, 62 Md.App. 116, 488 A.2d 523, 532 (1985)).

In *Ingram v. Peachtree South, Ltd.*, 182 Ga.App. 367, 355 S.E.2d 717 (1987), the Court of Appeals of Georgia confirmed the applicability of the Fireman's Rule under Georgia law. *Ingram* involved a negligence claim made by firemen for injuries suffered while fighting a fire on the defendant's premises. 355 S.E.2d at 717–18.

The Court of Appeals of Georgia stated that the Fireman's Rule is "[b]asically [ ] the principle [ ] that while a fireman may recover for negligence independent of the fire, a landowner is not liable for negligence in causing the fire. As an oft-cited case holds, one 'cannot complain of negligence in the creation of the very occasion for his engagement.'" *Id.* at 718 (quoting *Krauth v. Geller*, 31 N.J. 270, 274, 157 A.2d 129, 131 (1960)).

In affirming the grant of summary judgment barring the plaintiffs' negligence claim, the *Ingram* court applied an assumption of risk rationale. It determined that despite the "ample" evidence of the property owner's negligence leading to the start of the fire, the firemen were barred from recovery for their injuries resulting from the sudden acceleration of the blaze. *Id.* at 719. The *Ingram* court reasoned that as firemen, the plaintiffs had knowledge of the general danger of acceleration of a fire, as well as specific knowledge of a prior source of flammables on the defendant's property. *Id.*

In its next decision addressing the scope of the Fireman's Rule, the Court of Appeals of Georgia noted with approval its prior decision in *Ingram* barring recovery by injured firemen as a result of the defendant landowner's negligence. *See Bycom Corp. v. White*, 187 Ga.App. 759, 371 S.E.2d 233, 233–34 (1988). *Bycom*, however, involved different facts than those that had occasioned the rule of *Ingram*. In *Bycom*, the plaintiff fireman was dispatched to investigate a natural gas leak and was seriously injured when the leak caught fire. 371 S.E.2d at 233. The fireman sued the corporation whose agents had allegedly negligently ruptured the gas pipeline and had failed to indicate the location of the leak. *Id.* The *Bycom* court determined that the rule of landowner nonliability of *Ingram*, while "perfectly adequate" when applied to questions of negligence on premises owned by the defendant, would not cover the situation in which "the alleged negligence and the injury occurred off the premises of the alleged tortfeasor." *Id.* 371 S.E.2d at 234. In order to avoid a "'dichotomy ... which [would] deny recov-

ery to a fireman injured on-premises but allow recovery to a fireman injured off-premises,'" the *Bycom* court reviewed the policy justifications for the Fireman's Rule adopted in other jurisdictions. *Id.* (quoting *Koehn v. Devereaux*, 495 N.E.2d 211, 215 (Ind.Ct.App.1986)). The Court of Appeals of Georgia placed particular emphasis on the decision of the Maryland Court of Special Appeals, *Flowers v. Sting Sec.*, 488 A.2d 523, previously cited by the United States District Court for the Middle District of Georgia as authority for adoption of the Fireman's Rule under Georgia law. It quoted, *inter alia*, the following passage from that decision discussing the various rationales for the Rule:

> Closely intertwined with the primary assumption of risk rationale, and strongly supporting it, but with an independent content of its own is the public policy rationale. That rationale, in a nutshell [has been] articulated [as follows]: "A public safety officer cannot base a tort claim upon damage caused by the very risk that he is paid to encounter and with which he is trained to cope.... Such officers, in accepting the salary and fringe benefits offered for the job, assume all normal risks inherent in the employment as a matter of law and thus may not recover from one who negligently creates such a risk."

*Flowers v. Sting Sec.*, 488 A.2d at 534–35 (citing *Steelman v. Lind*, 97 Nev. 425, 634 P.2d 666, 667 (1981)).

After review of the leading cases, the Court of Appeals of Georgia furnished its interpretation of the Fireman's Rule:

> [T]he public policy of the State of Georgia requires adoption of a Fireman's Rule in Georgia broader than that stated in *Ingram*.... [W]e now hold that it is a public policy of the State of Georgia that a public safety employee cannot recover for injuries caused by the very negligence that initially required his presence in an official capacity and subjected the public safety employee to harm; that public policy precludes recovery against an individual whose negligence created a need for the presence of

the public safety employee at the scene in his professional capacity.

"That is not to say that firemen or police are barred from recovery in all instances in which they are injured by negligent acts. The relevant inquiry is whether the negligently created risk which resulted in the fireman's or policeman's injury was the very reason for his presence on the scene in his professional capacity. If the answer is yes, then recovery is barred; if no, then recovery may be had." Furthermore, it is important to note that our holding in this case addresses only the initial negligence which requires the public safety employee's presence in his official capacity. We make no rule in this case concerning liability for subsequent acts of negligence or for intentional wrongdoing.

*Bycom,* 371 S.E.2d at 235 (paraphrasing *Calvert v. Garvey Elevators, Inc.,* 236 Kan. 570, 694 P.2d 433 (1985), and quoting *Pottebaum v. Hinds,* 347 N.W.2d 642, 646 (Iowa 1984)). Applying these principles, the Court of Appeals of Georgia awarded summary judgment under the Fireman's Rule for the defendant gas company whose negligence had occasioned the presence of the firemen, notwithstanding the company's failure to warn of the location of the gas leak. *Id.* at 236.

## II.

Having reviewed the principles established by Georgia case law, we turn to the application of the Fireman's Rule in this case. The question is whether the Fireman's Rule prevents a fireman injured in the course of his duties from bringing an action for negligence against the manufacturer of a product whose explosion during a fire causes the fireman's injury. Our review of Georgia law convinces us that our position is analogous to that of the Georgia Court of Appeals in *Bycom,* insofar as we are called upon to determine the applicability of the Fireman's Rule in circumstances not previously anticipated by the case law.

Appellant's argument against application of the Fireman's Rule is based on *dicta* in the *Bycom* decision, in which the Georgia Court of Appeals adopted portions of the opinion of the Iowa Supreme Court in *Pottebaum v. Hinds:* " 'The relevant inquiry is whether the negligently created risk which resulted in the fireman's or policeman's injury was the very reason for his presence on the scene in his professional capacity.' " *Bycom,* 371 S.E.2d at 235 (quoting *Pottebaum,* 347 N.W.2d at 646). Plaintiff insists that this test should be dispositive in the instant case, because the explosion of the Volvo's shock absorbers was not the reason for his presence at the fire. Instead, appellant argues, "[t]he fire merely demonstrated the negligently designed shock absorber by causing it to explode." Brief of Appellant at 8.

Our review of the *Pottebaum* decision persuades us that such an application of the Fireman's Rule cannot have been intended by the *Bycom* court. *Pottebaum* involved a claim for damages made by policemen under a dram shop statute against the owner of a tavern. *Pottebaum,* 347 N.W.2d at 643. The policemen were injured when an intoxicated patron assaulted them while they were attempting to quell a disturbance in the tavern. *Id.* The Supreme Court of Iowa determined that the Fireman's Rule applied to bar the claim against the tavern owner, reasoning that it would "offend[ ] public policy to say that a citizen invites private liability merely because he happens to create a need for [ ] public services." *Id.* at 645.

In order to qualify this holding, however, the Iowa Supreme Court illustrated the proposition cited in the *Bycom* court *dicta* through the example of a Nevada case in which the Fireman's Rule was held to bar recovery against the individual whose presence had originally required the presence of a police officer, but not to bar recovery against a third party whose intervening negligence caused injury to the officer. *Id.* at 646 (citing *Steelman v. Lind,* 634 P.2d at 666–67 n. 1). In the Nevada case, it was held that the Fireman's Rule did not bar a suit against the driver of a tractor trailer who crashed into the police officer's parked car while that officer was attempting to

divert traffic around a hazard on the roadway. The Iowa Supreme Court stated that although policemen are barred from recovery against the person whose negligence creates the need for their presence, they are not barred from recovery for negligent or intentional acts of misconduct by a third party. Nor would they be barred from recovery if the individual responsible for their presence engaged in subsequent acts of negligence or misconduct once the officer was on the scene.

*Id.* at 646.

The *Bycom* court's adoption of the language of the *Pottebaum* decision appears to have been intended to preserve from the scope of the Fireman's Rule the possibility of liability against a third party who enters into a situation in which the services of a fireman or policeman have already been required, and whose intentional act or supervening negligence subsequently causes injury to the policeman or fireman. We think that the *dicta* in the *Bycom* case that are based on the *Pottebaum* decision cannot fairly be said to apply to the circumstances of appellant's claim against the manufacturer of a product whose explosion in the course of a fire causes injury to a fireman. The question of the liability of a manufacturer to firemen for the explosion of its product in the course of a fire presents a question that is wholly distinct from the situation anticipated by the Georgia Court of Appeals in *Bycom* when it cited the rule of *Pottebaum*.[3]

Rather than apply the *dicta* in the *Bycom* case in a wooden fashion, we, like the *Bycom* court, choose instead to rely on the conceptual underpinnings of the Fireman's Rule in order to determine whether that Rule should be applied in the circumstances of this case. As our discussion of the Georgia case law illustrates, such an approach is necessary where there is no decision directly on point on the issue of whether the Fireman's Rule will bar recovery for negligence against the manufacturer of a product whose explosion during the course of a fire injures a firefighter.[4]

We, therefore, must look for guidance to the two policy rationales adopted by the Court of Appeals of Georgia as the basis for its recognition of the Fireman's Rule in *Bycom:* assumption of risk and public policy. The court observed that assumption of risk was " 'the major modern justification for the Fireman's Rule,' " *Bycom*, 371 S.E.2d at 234 (quoting *Flowers v. Sting Sec.*, 488 A.2d at 532), in the sense that the risk of injury by a fireman was " 'in the

**3.** This reading of *Bycom's* holding finds additional support in the other principal case relied upon by the Georgia Court of Appeals, *Flowers v. Sting Security.* In an opinion affirming that decision, the Maryland Court of Appeals explained the purpose of limiting the scope of the Fireman's Rule to the initial negligence that requires the public safety officer's presence in his official capacity:

> [F]iremen and policemen are not barred from recovery for all improper conduct. Negligent acts not protected by the fireman's rule may include failure to warn the firemen of pre-existing hidden dangers where there was knowledge of the danger and an opportunity to warn. They also may include acts which occur subsequent to the safety officer's arrival on the scene and which are outside of his anticipated occupational hazards.... In these situations, a fireman or policeman is owed a duty of due care. Moreover, the fireman's rule does not apply to suits against arsonists or those engaging in similar misconduct.

*Flowers v. Rock Creek Terrace Ltd. Partnership,* 308 Md. 432, 520 A.2d 361, 368–69 (1987) (foot-

notes omitted). Other decisions have applied a similar rationale for limiting the application of the Fireman's Rule. *See Johnson v. Teal,* 769 F.Supp. 947, 951–52 (E.D.Va.1991) (rejecting application of Rule under Virginia law to bar recovery by motorcycle policeman injured by negligent motorist in course of policeman's response to robbery alarm); *Garcia v. City of South Tucson,* 131 Ariz. 315, 640 P.2d 1117, 1120–21 (Ct.App.1981) (Rule inapplicable to bar claims for "injuries [ ] caused by the independent negligence of a third person"); *Sutton v. Shufelberger,* 31 Wash.App. 579, 643 P.2d 920, 926 (1982) (Fireman's Rule does not apply to "third party whose intervening negligence injures the official while he is in the performance of his duty").

**4.** The only decision under Georgia law that is nearly on point is that of the district court in *Brown v. General Electric,* 648 F.Supp. 470 (M.D.Ga.1986), discussed *supra.* Besides having no binding effect under Georgia law, the district court's decision does not directly address the situation in which the explosion of the allegedly negligently-made product occurs *during* the fire.

broad, primary sense [ ] an inherent incident of his occupation.'" *Id.* (quoting *Flowers v. Sting Sec.,* 488 A.2d at 534). The *Bycom* court also noted the public policy justification for the Rule:

> "'A public safety officer cannot base a tort claim upon damage caused by the very risk he is paid to encounter and with which he is trained to cope....' The Fireman's Rule ... stands for the principle that societal responsibility rather than tort recovery is the better, surer, and fairer recourse for a fireman or policeman injured in the line of duty."

*Id.* (quoting *Flowers v. Sting Sec.,* 488 A.2d at 534–35 (in turn quoting *Steelman v. Lind,* 634 P.2d at 667)). The *Bycom* court further quoted that part of the Maryland Court of Appeals decision in *Flowers v. Sting Sec.* that adopted the "forceful statement of the public policy rationale" made by the New Jersey Supreme Court:

> "'[I]t is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. [...] Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injury suffered by the expert retained with the public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling.'"

*Id.* at 234–35 (quoting *Flowers v. Sting Sec.,* 488 A.2d at 536 (in turn quoting *Krauth v. Geller,* 157 A.2d at 130–31)).

We have surveyed the case law on the issue of whether the Fireman's Rule bars suits for negligence or strict products liability against the manufacturers of products that cause injury to firemen or other public safety officers in the course of their duties. Where a product is the alleged cause of a public safety officer's injury, the claims for damages have more often sounded in strict liability than in negligence. Nonetheless, in these cases a majority of states that recognize the Fireman's Rule have applied it to bar strict products liability claims against manufacturers. *See Walters v. Sloan,* 20 Cal.3d 199, 571 P.2d 609, 612, 142 Cal.Rptr. 152, 155 (1977) (Fireman's Rule applies to cases involving products liability and other claims made by persons "who, fully aware of the hazard created by the defendant's negligence, voluntarily confront[ ] the risk for compensation"); *Flowers v. Rock Creek Terrace Ltd. Partnership,* 308 Md. 432, 520 A.2d 361, 370 (1987) (Fireman's Rule barred strict products liability and negligence claims where elevator shaft fall injuring fireman was "within the range of anticipated risks of firefighting"); *Mahoney v. Carus Chemical Co.,* 102 N.J. 564, 510 A.2d 4, 12–13 (1986) ("Fires created by defective products do not pose a fundamentally different risk to firefighters from that posed by fires instigated by other causes. We find no rationale consistent with the policy underlying the fireman's rule that justifies a different treatment of manufacturers ... [and] do not recognize an exception to the [ ] rule based solely on strict liability for defective products."); *Austin v. City of Buffalo,* 179 A.D.2d 1075, 580 N.Y.S.2d 604, 607, (1992) (Fireman's Rule is applicable to "manufacturers who would otherwise be liable under the principles of products liability" because "[i]n view of the rationale for the [Rule], there is no justification for excluding manufacturers from the exemption afforded by the rule"); *Mignone v. Fieldcrest Mills,* 556 A.2d 35, 41 (R.I.1989) (adopting holding of *Mahoney v. Carus Chemical* to bar strict products liability against manufacturer and seller of electric blanket that caused fire). *See also Pottebaum v. Hinds,* 347 N.W.2d at 646 (noting that "[g]enerally, courts have held that the fireman's rule is applicable to all causes of action, regardless of the particular nature of an action"); *Moreno v. Marrs,* 102 N.M. 373, 376, 695 P.2d 1322 (N.M.Ct.App.1984) (adopting Fireman's

Rule of *Walters v. Sloan*). *See generally* John P. Ludington, Annotation, *Products Liability: "Fireman's Rule" As Defense,* 62 A.L.R. 4th 727 (1991).[5]

These decisions share the assumption that, at a minimum, the Fireman's Rule will bar an action for strict products liability against a manufacturer whose product starts the fire that occasions the public safety officer's presence. *See, e.g., Mahoney,* 510 A.2d at 13; *Mignone,* 556 A.2d at 41. Some of these cases, however, apply an even broader interpretation of the Fireman's Rule. These cases extend the assumption of risk rationale to its maximum ambit, insofar as they apply the Rule to bar *any* strict products liability or negligence claim by a public safety officer against a manufacturer of a product that causes an injury during the fire. *See Flowers v. Rock Creek Terrace,* 520 A.2d at 370 (barring all claims against elevator manufacturer); *Austin,* 580 N.Y.S.2d at 607 (upholding summary judgment under Rule for manufacturers of propane gas tank that leaked and exploded).

In *Flowers v. Rock Creek Terrace,* for example, the Maryland Court of Appeals reviewed negligence and strict products liability claims against the manufacturer of an elevator by a fireman who fell down an elevator shaft while fighting an apartment building fire. 520 A.2d at 370. The Maryland Court of Appeals rejected the theory that the elevator manufacturer and building owner owed a duty to the fireman to "maintain a reasonably fireproofed elevator system and to warn of potential malfunctions of the elevators in the event of the fire." *Id.* It determined that both the negligence and strict products liability claims against the elevator manufacturer were barred by the Rule, because "although these [were] not allegations of negligence in the creation of the fire that originally brought the firemen to the apartment building, an accident involving an open elevator shaft nevertheless is within the range of the anticipated risks of firefighting." *Id.*

Read in conjunction with the Georgia Court of Appeals' acceptance of the broad public policy and assumption of risk rationales for the Fireman's Rule in *Bycom,* these cases persuade us that the Georgia courts would apply the Fireman's Rule to bar plaintiff-appellant's negligence claim against Volvo NAC. The risk of explosion of a burning automobile was one of the risks that plaintiff had been specifically trained to meet. *See* Record at 36–37 (plaintiff's statement that one of the "main things" his classroom instructors had warned him about was "always to be real careful as far as automobiles, gas tanks exploding and et cetera"). The plaintiff's training included instruction concerning the possibility of explosion of flammable liquids, containers and storage tanks in the course of a fire in a residential home. *Id.* at 10–13. Plaintiff had previously fought several fires in residential homes, *id.* at 14,

---

**5.** One state, however, has rejected the broad application of the Fireman's Rule to bar products liability actions. *See Court v. Grzelinski,* 72 Ill.2d 141, 19 Ill.Dec. 617, 620, 379 N.E.2d 281, 284 (1978) ("[t]he rule cannot be expanded to a free-floating proposition that a fireman cannot recover for injuries resulting from risks inherently involved in fire-fighting"). Other states have abolished the Fireman's Rule entirely. *See Christensen v. Murphy,* 296 Or. 610, 620–21, 678 P.2d 1210 (1984) (abolishing Fireman's Rule in Oregon because of statutory abolition of implied assumption of risk); *Andren v. White–Rodgers Co.,* 465 N.W.2d 102, 105 (1991) (noting statutory abolition of Rule in Minnesota). Minnesota's abolition of the Fireman's Rule superseded an earlier decision of the Minnesota Supreme Court applying the Rule to bar claims for strict products liability. *See Armstrong v. Mailand,* 284 N.W.2d 343, 352 (1979).

Other states have not addressed the question of a bar to products liability suits under the Fireman's Rule. *See Kreski v. Modern Wholesale Elec. Supply Co.,* 429 Mich. 347, 372, 415 N.W.2d 178 (1987) (suit by fireman for negligence in design of building that collapsed on him barred by Fireman's Rule where "the scope of the rule ... includes negligence in causing the incident requiring a safety officer's presence and those risks inherent in fulfilling ... fire fighting duties"); *Winn v. Frasher,* 116 Idaho 500, 777 P.2d 722 (1989) (adopting Fireman's Rule of *Kreski,* but declining to indicate whether Rule barred suit against manufacturer of chemical that injured policemen); *Calvert v. Garvey Elevators, Inc.,* 236 Kan. 570, 694 P.2d 433 (1985) (adopting Fireman's Rule nearly identical to that of Idaho Supreme Court in *Pottebaum v. Hinds*).

and was aware of the possibility of injury in the course of his duties. *Id.* at 39. The possibility of an unexpected explosion of some object in the Edmond's burning house and garage was, therefore, "within the anticipated risks of firefighting." *Flowers v. Rock Creek Terrace,* 520 A.2d at 370.[6]

The record further indicates that workmen's compensation was paid the plaintiff during the period of his convalescence for his injuries. Record at 50–52. Such compensation is in keeping with the public policy justification underlying the Fireman's Rule that " 'societal responsibility rather than possible tort recovery is the better, surer, and fairer recourse for a fireman … injured in the line of duty.' " *Bycom,* 371 S.E.2d at 234 (citing *Flowers v. Sting Sec.,* 488 A.2d at 535).

We can see no basis for distinguishing this case, which involves a negligence claim against a product manufacturer, from the principles developed by the majority of jurisdictions in the context of strict products liability claims against manufacturers. Strict products liability claims have been barred under the Fireman's Rule under an assumption of risk rationale, either when the product in question starts a fire that causes the public safety officer's injury, or when the product causes injury during the course of the fire. Like the Maryland Court of Appeals, we conclude that the assumption of risk rationale for the Fireman's Rule applies regardless of whether the attempted recovery from the product manufacturer sounds in strict products liability or negligence.[7]

Nor do we think that there are grounds for refusing to apply the Fireman's Rule in a situation in which the allegedly negligently designed product does not actually start the fire, but instead causes injury to the public safety officer during the course of the fire. It would require a perverse logic to apply the Fireman's Rule to bar suit against the manufacturer whose negligently-designed product causes a fire, and at the same time allow suits for negligence against the makers of products that cause injury after being exposed to, or burnt in, a fire.[8] We think that the Georgia courts would reject such an anomalous result, and would instead reach the conclusion that the explosion of part of a burning automobile during the course of a fire would fall "within the range of the anticipated risks of firefighting." *Id.* at 370. *See also Ingram,* 355 S.E.2d at 719 (noting that where firemen know of prior source of flammables, sudden acceleration of the blaze is within the range of possibilities that firemen have knowledge).

We, therefore, agree with the conclusion of the district court that the Fireman's Rule entitled Volvo NAC to summary judgment as a matter of law.

AFFIRMED.

BIRCH, Circuit Judge, dissenting:

I respectfully dissent. While the majority opinion is thoughtful and thorough, it frankly acknowledges that: "As our discussion of the Georgia case law illustrates, such an approach is necessary *where there is no decision directly on point* on the issue of whether the Fireman's Rule will

---

**6.** At oral argument, appellant was willing to concede that if an automobile's gas tank was exposed to fire and blew up, a tort claim based on any injury resulting from that explosion would probably be barred by the Fireman's Rule. Counsel distinguished the instant case on the grounds that unlike an automobile's gas tank, the Volvo automobile's shock absorbers could have been manufactured in such a manner that they would not have exploded when exposed to fire. The artificiality of such a distinction, and the uncertain legal principle it would engender, illustrates the sagacity of the application of the Fireman's Rule in this case.

**7.** *Cf. Flowers v. Rock Creek Terrace,* 520 A.2d at 370 n. 10 (also noting in the context of the claim against the building owner that "the fact that an asserted basis for recovery may be couched in terms of strict liability rather than negligence does not, in itself, render the [Rule] inapplicable").

**8.** As noted in part I, *supra,* there is a more compelling basis for distinguishing between the negligence that occasions the public safety officer's presence and subsequent acts of negligence in the situation in which it is third party's supervening negligence or intentional act that causes injury to the public safety officer. *See supra* note 3 and accompanying text.

bar recovery for negligence against the manufacturer of a product whose explosion during the course of a fire injures a firefighter." Maj. Op. at 686 (emphasis added). Under such circumstances we should certify the unresolved issue of Georgia law to the Supreme Court of Georgia. For that reason I cannot join in the majority's resolution of this case.