A95A1246. MARTIN v. GAITHER et al.
(466 SE2d 621)

BEASLEY, Chief Judge.

After he was injured as a pedestrian, Georgia State University Police Officer Gaither and his wife sued MARTA, the bus driver, and car operator Martin for negligence and loss of consortium. We permitted Martin's interlocutory appeal from the denial of her motion for summary judgment. It had rested on the theory that the fireman's rule applies to police officers.

The evidence construed in a light most favorable to Gaither and his wife shows that on February 3, 1993, Gaither was directing traffic on Gilmer Street in Atlanta. Martin, who is a university student, was traveling down Gilmer Street on her way to one of the school's park-

ing lots. When she arrived at the lot, it was full, and Gaither motioned for her to continue moving. Martin complied, drove around the block, and returned to Gaither's location. She stopped her car in the street adjacent to a "No Stopping or Standing" sign. Gaither, who was on the sidewalk at the time, instructed Martin to move her car, but Martin failed to obey. Consequently, Gaither entered the street to talk to her on the driver's side and again told Martin to move her car. As Martin began to pull away, Gaither straightened up and was struck by a MARTA bus that had changed lanes in an attempt to go around Martin. The bus knocked Gaither into the back of Martin's car, causing him injury.

The first question in this case is whether the fireman's rule should be applied to the plaintiff police officer Donald Gaither in this negligence action. He and his wife allege that Martin negligently operated her vehicle, creating a traffic hazard. This, it is alleged, in concert with the negligence of the bus driver, caused the injury-producing collision of Gaither first with the bus and then with Martin's car.

Generally speaking, the fireman's rule is that "while a fireman may recover for negligence independent of the fire, a landowner is not liable for negligence in causing the fire. . . . [O]ne 'cannot complain of negligence in the creation of the very occasion for his engagement.' " *Ingram v. Peachtree South*, 182 Ga. App. 367, 368 (355 SE2d 717) (1987). The trial court was correct in stating that the fireman's rule has not yet been applied to police officers in Georgia. The court in *Bycom Corp. v. White*, 187 Ga. App. 759, 762 (1) (371 SE2d 233) (1988), stated that the rule was applicable to "public safety employee[s]," including both firemen and policemen. But this purported holding in *Bycom* is mere dicta, as that case involves a fireman who was seriously burned by exploding natural gas when firemen were summoned to investigate a gas leak. The issue was whether the fireman's rule, ordinarily stated in terms of a landowner's liability, precluded recovery from an off-premises tortfeasor. The court adopted a broader view of the rule than had been stated in *Ingram* and held that it applied and thus defeated recovery despite the fact that defendant was not a landowner on whose property the injury occurred. Thus, whether the fireman's rule applies to law enforcement officers is still open.

The fireman's rule, as such, was introduced into Georgia law less than a decade ago by a federal trial court, in *Brown v. Gen. Elec. Corp.*, 648 FSupp. 470 (M.D. Ga. 1986).[1] The diversity case was gov-

---

[1] But see *Todd v. Armour & Co.*, 44 Ga. App. 609 (162 SE 394) (1932), holding that a fireman who enters premises in the exercise of his duty is a licensee; *Baxley v. Williams Constr. Co.*, 98 Ga. App. 662, 669 (1), (2) (106 SE2d 779) (1958), where two of the three judges agreed that a fireman is a licensee when he goes on premises to extinguish a fire, so

erned by Georgia law, and although the court recognized that the Supreme Court of Georgia had not yet addressed the rule, it concluded that the Supreme Court would adopt the rule if it had the opportunity to do so. Reasoning that the doctrine of assumption of the risk is a solid part of Georgia negligence law and that there was widespread adoption of the rule in other states, the court applied it in the case as Georgia law.[2] It articulated the rule as "preclud[ing] a fireman injured while fighting a fire from bringing an action against the party whose negligence allegedly caused the fire." Id. at 471.

The plaintiff was a fireman who was injured when he jumped off a burning building after an explosion. He alleged that the fire was initiated by a defective coffee maker manufactured by defendant. The court awarded summary judgment to the defendant as to both negligence and strict liability because it concluded that the fireman had assumed the risk of the injury as a matter of law: "jumping off a burning building is one of the precise risks a fireman knows he will confront when fighting fires. . . ." Id. at 472.[3]

The next year, in *Ingram*, supra, we were faced with the plaintiffs' contention that "the fireman's rule is antiquated and should be abolished." Id. at 368. Finding that under Georgia law, firemen are treated as licensees of the landowner upon whose property they come to fight fires, we acknowledged the validity of the fireman's rule without referring to it as such and turned to the determination of "what duty is owed the fireman with regard to events extrinsic to the fire's inception." Id. at 368. The fire had been started in the vacant building by a vagrant, and the firemen sued the premises owner for negligently maintaining the building. We concluded in effect that there was a lack of proximate cause, that "[p]laintiffs' injuries resulted not from any pitfall [created or allowed by defendant] but from the fire's sudden intensity," which led to the firemen falling or jumping to the street. Id. at 369. Moreover, plaintiffs had at least equal knowledge of

that defendant was liable only for "pitfalls, mantraps and things of that kind" or wanton and wilful conduct.

[2] The court was not persuaded by plaintiff that Georgia had already considered and rejected the fireman's rule in *Walker Hauling Co. v. Johnson*, 110 Ga. App. 620 (139 SE2d 496) (1964). This Court did not view plaintiff Johnson as a "fireman" and held that the doctrine of rescue applied, so plaintiff was not precluded from recovery for negligence. Assumption of risk was not an issue, this Court ruled, "since the doctrine of rescue necessarily contemplates an assumption of the risk inherent in the peril created by the defendants' negligence and allows recovery for injuries thereby incurred, for the reason that the defendants were charged with the foreseeability of their negligence attracting rescuers to assume the risks." Id. at 625. It is evident that this did not constitute rejection of the fireman's rule.

[3] The court ruled that summary judgment stood alternatively on another base, that any defect in the coffee maker could not be considered the proximate cause of the plaintiff fireman's injuries. The court cited two Georgia cases which depended on this same footing for the preclusion of recovery by injured firemen from those whose negligence caused the fire.

the condition of the premises. These factors precluded recovery, and summary judgment to defendant was affirmed. See, in this connection, 40 Mercer L. Rev. 377, 387-388 (1988).

The Eleventh Circuit Court of Appeals, in a two-to-one decision in *White v. Edmond*, 971 F2d 681 (11th Cir. 1992), reviewed this beginning history of the fireman's rule in Georgia, referring to the "equal knowledge" aspect as an application of an assumption of risk rationale, and went on to examine *Bycom Corp.*, supra. It interpreted the *Bycom Corp.* decision as expanding the fireman's rule of landowner nonliability to cover the alleged off-premises negligence of a party who was not the landowner. See also 41 Mercer L. Rev. 355, 357-358 (1989). Defendant, manufacturer of an allegedly defective auto, was granted summary judgment because "as a fireman, [plaintiff] White knowingly and voluntarily assumed all risks normally associated with fighting fires, including the explosion of part of the Volvo automobile." *Edmond*, supra at 682. The Eleventh Circuit rejected a narrow view of the fireman's rule as being Georgia's view and applied the rule to the situation in that case because "[t]he possibility of an unexpected explosion of some object in the Edmonds' burning house and garage was . . . 'within the anticipated risks of firefighting.'" Id. at 689. This applied to both the negligence and strict liability claims and was based on the two-fold rationale of assumption of risk and public policy found in other states' cases and accepted as sound in *Bycom Corp.* The dissent expressed the opinion that "'the issue of whether the Fireman's Rule will bar recovery for negligence against the manufacturer of a product whose explosion during the course of a fire injures a firefighter'" should be certified to the Supreme Court of Georgia. Id. at 689-690.

The strength of the assumption of risk doctrine to persons employed in security is shown in *Atlanta Braves v. Leslie*, 190 Ga. App. 49 (378 SE2d 133) (1989). Although there was the premises liability peg upon which to hang it, as in the firefighter cases, since two defendants were the landlord and tenant of the place where plaintiff was shot by a robber, the court viewed plaintiff as a special kind of invitee because he was on the premises as an armed security guard, an employee. It reasoned: "The possibility of a face-to-face encounter with a criminal is an ordinary and obvious risk incident to employment as an armed security guard. Accordingly, as a matter of law, Leslie, by accepting employment as ARA's security guard, assumed the risk that he would have such encounters on the stadium premises. Leslie was, in effect, hired to provide an element of the very security that he alleges was negligently lacking." Id. at 50. Thus, there was no liability to this business invitee because he assumed the risk.

The court went further to hold that, even without the premises liability foundation, and even if Leslie was an independent contractor

so not foreclosed by a Workers' Compensation Act defense, Leslie was precluded from recovery against his employer because by accepting employment as an armed security guard, he assumed the risk of injuries "resulting from the ordinary and obvious danger of encountering a criminal on the premises." Id. at 52. The court did not even find it necessary to invoke the additional justification of "public policy" to deny recovery as a matter of law.[4]

*Wilbanks v. Echols*, 209 Ga. App. 210 (433 SE2d 134) (1993), is a non-precedential opinion which seems to be the latest case on the subject at hand. Wilbanks was a volunteer firefighter with a county fire department. He fell into a pit and was injured as he walked towards the fire on property other than that of the landowner who was suffering the fire. He sued the house builders who dug the pit for their debris on the building site. The court refused to apply the fireman's rule because the injuries were caused "not by reason of the fire but . . . while trying to get to the fire . . . by events which were extrinsic to the fire's inception." Id. at 211. That aside, the court analyzed the house builders' duty to the fireman. Since there was some evidence that part of the pit was on the public right-of-way and the pit was a dangerous static condition, there was "a material question of fact . . . whether the defendants . . . were negligent." Id. at 213. Although the court initially seemed to regard plaintiff as a licensee, to whom a duty is owed only for wilful and wanton conduct, it assigned a higher duty to one who maintains a dangerous nuisance where it might injure someone who " ' "from lawful necessity or convenience" ' " comes upon it. (Citations omitted.) Id. In such situations, the court held, the duty is not to be negligent, whether the injured party is a licensee or invitee.

Thus, the fireman's rule has been viewed as adopted in Georgia, broadly construed to cover tortfeasors other than those whose acts prompted the presence of the fireman at the place of injury, narrowly construed to exclude subsequent or extrinsic acts of negligence other than the initial reason for the fireman's professional presence, and in dicta, broadly construed to apply to "public safety employee[s]" including police officers. We hold that it does include them.

In this case, Gaither was on the scene not because of someone's negligence; he was not responding to a particular call for service but was assigned to that location to control traffic. His occupation as a traffic cop intrinsically or inherently requires risk-taking in or about traffic. But there is no negligence of another in this primary stage of assumption of risk.

---

[4] It should be noted that the case did not involve any question of the robber's civil liability to Leslie.

With respect to this particular incident, plaintiff assumed no specific risk when defendant stopped; he just waved her on and she went, while he was on the sidewalk. When she came back around, he assumed no risk at first but again waved her on when she stopped when the sign said "no stopping or standing." When she refused to move, negligently or wilfully in violation of law, he assumed the risk of injury by going out into the street and traffic to enforce the law. Her latter action (or inaction) is what prompted his being "on the scene" in the narrower sense of the street location and in the narrower time frame than his period of duty that day. He went into the street to fulfill his professional duty to keep traffic moving and drivers obedient to the law. Adopting the rationale in *Krauth v. Geller*, 157 A2d 129, 130-131 (31 N. J. 270) (1960), he assumed the risk of just such an injury "as an inherent incident of his occupation."

" 'A public safety officer . . . cannot base a tort claim upon damage caused by the very risk that he is paid to encounter and with which he is trained to cope. . . .' " *Flowers v. Sting Security*, 488 A2d 523, 534 (62 Md. App. 116) (1985), quoted with approval in *Bycom*, supra at 761. It is instead society's responsibility to compensate public safety employees for the risk-taking which their respective professions intrinsically require and for the consequences of that risk-taking. Although the alleged tortfeasor was obliged to follow the law and to heed the policeman's direction, she did not owe him a duty to exercise care "so as not to require the special services for which he is trained and paid." *Krauth*, supra at 131.

This is analogous to the degree of duty a landowner owes to a fireman, the law being that it is only the duty owed to a licensee because of public policy: first, the fireman's right to go on premises to extinguish fire is based on the law's permission and not the landowner's invitation; second, too high a degree of foreseeability would be required to guard against such a remote and unpredictable injury. *Baxley*, supra at fn. 1. See also Restatement of the Law, Torts 2d, p. 228, § 345, comment c.

It is repeated in *Ingram*, supra at 368, that "one 'cannot complain of negligence in the creation of the very occasion for his engagement.' [Cit.]" We cannot distinguish defendant's action as being independent of the reason for the officer's presence. His injury was proximately related to controlling the flow of traffic and the enforcement of traffic laws, the very reason for him being on the scene.

Applying the fireman's rule to public safety employees means that they are precluded from recovery for injuries received when they are injured as a result of the negligence that caused them to be called to the scene. However, like firemen, they are not precluded from recovery for injury from pitfalls, mantraps and things of that kind or wanton and wilful conduct. See *Baxley*, supra at 669 (1). This case

does not involve premises liability, but rather only the duty of a driver on a public street. She would be liable, then, only for wanton and wilful conduct, not mere negligence.

Wanton and wilful conduct differs from negligence. *Central of Ga. R. Co. v. Moore*, 5 Ga. App. 562, 564 (2) (63 SE 642) (1909). It is conduct " 'such as to evidence a wilfull intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences . . . as to justify the jury in finding a wantonness equivalent in spirit to actual intent.' [Cit.] . . . There is an element of intent, actual or imputed, in 'wilful and wanton conduct' which removes such conduct from the range of conduct which may be termed negligent. Proof of wilful or wanton conduct will remove the shield of sovereign immunity; proof of negligence will not." (Emphasis omitted.) *Truelove v. Wilson*, 159 Ga. App. 906, 908 (4) (285 SE2d 556) (1981); *Hendon v. DeKalb County*, 203 Ga. App. 750, 758 (5) (417 SE2d 705) (1992).[5]

The complaint alleged that defendant Martin "negligently operated her vehicle creating a traffic hazard on . . . a public roadway. . . ." Plaintiffs' submission for the pretrial order, which was incorporated into it, alleges that the basis for Martin's liability is "for creating a traffic hazard and illegally parking in the roadway." It was not until plaintiffs filed a response to defendant Martin's motion for summary judgment, after entry of the final pretrial order, that they stated that their theory of recovery was that she "illegally disobeyed the traffic control signs which directed her not to stop in the roadway [and] wilfully and wantonly, with reckless indifference to the consequences, refused to obey the instructions of a law enforcement officer, forcing officer Gaither into a position of great peril." In plaintiffs' brief in support of their response, they characterize the failure to obey the signs as negligence and the failure to obey the officer's instructions as a wilful and wanton act of "negligence." Martin understood their theory of recovery as that of negligence, as alleged in the complaint.

Even if the newly advanced theory were permitted on the principle that pleadings generally are construed by the particular acts alleged and not by the characterizations put on them by the pleader, there is no evidentiary support for it. It would stretch beyond reason the allowance given inferences, to authorize a finding that she intended to inflict injury on the officer or acted so recklessly and with such indifference to the consequences of her acts that it was equiv-

---

[5] This latter statement demonstrates the general harmony between a public safety employee's immunity from liability for negligent acts causing injury to others and the immunity of those being served from liability for negligent acts causing injury to the public safety employee.

alent to intent to injure.

A public safety employee (firefighter, police officer) does not assume the risk of injury when subjecting himself or herself in the line of duty to another's wilful and wanton conduct, but this must be properly pled and proof presented. Summary judgment was required as to Martin because she "demonstrate[d] by reference to evidence in the record that there is an absence of evidence to support at least one essential element of the non-moving party's [i.e., plaintiffs Gaithers'] case." *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474) (1991).

*Judgment reversed. Birdsong, P. J., Andrews, Johnson and Smith, JJ., concur. McMurray, P. J., Pope, P. J., Blackburn and Ruffin, JJ., dissent.*

POPE, Presiding Judge, dissenting.

I respectfully dissent to the majority's opinion to the extent that it applies the fireman's rule to bar plaintiffs' recovery in this case.

Generally speaking, the fireman's rule "precludes recovery for injuries received by firefighters when they are injured as a result of the negligence that [originally] caused them to be called to the scene of the fire." (Citation omitted.) *Wilbanks v. Echols*, 209 Ga. App. 210, 211 (433 SE2d 134) (1993). Although the trial court was correct in stating that the fireman's rule has not yet been applied to police officers in Georgia, in *Bycom Corp. v. White*, 187 Ga. App. 759, 762 (1) (371 SE2d 233) (1988), we specifically stated that the rule was applicable to public safety employees. This includes both firemen and policemen. Id. Consequently, I agree with the majority's determination that the fireman's rule does apply to police officers. I do not, however, agree with the majority that that rule should be applied in this case.

Under the fireman's rule, firemen and police officers are not "barred from recovery in all instances in which they are injured by negligent acts. The relevant inquiry is whether the negligently created risk which resulted in the fireman's or policeman's injury was the very reason for his presence on the scene in his professional capacity. If the answer is yes, then recovery is barred; if no, recovery may be had." (Citation and punctuation omitted.) Id.

In this case, it is undisputed that Gaither had been directing traffic on Gilmer Street for 15 to 20 minutes before Martin arrived. Therefore, it cannot be said that the original reason for Gaither's presence at the scene had anything to do with the negligence on Martin's part. Moreover, even if Gaither was not considered "on the scene" until Martin actually stopped her car in the middle of the street in violation of OCGA § 40-6-203 (a) (1) (K), Martin's initial act of negligence in stopping her car did not result in Gaither having to subject himself to the risk of walking out into the street. Instead, it

was Martin's subsequent *wilful* failure to obey Gaither's instructions in violation of OCGA § 40-6-2 that caused Gaither to subject himself to possible injury. Although the majority concludes that Gaither failed to demonstrate that Martin's refusal to obey his instructions amounted to reckless or wanton and wilful conduct, which admittedly would preclude application of the fireman's rule, based on the evidence of record, such a determination is better left to a jury. Consequently, I believe that the fireman's rule, and its underlying rationale (assumption of the risk), should not be applied to bar recovery here as a matter of law.

I am authorized to state that Presiding Judge McMurray, Judge Blackburn and Judge Ruffin join in this dissent.

DECIDED DECEMBER 5, 1995 —
RECONSIDERATION DENIED DECEMBER 20, 1995 —

*Dennis, Corry, Porter & Gray, R. Clay Porter, Thomas D. Trask,* for appellant.
*Joe A. Weeks,* for appellees.