**BATH EXCAVATING & CONSTRUC-TION CO., and Hahn Plumbing & Heating, Inc., Petitioners,**

v.

**Norman WILLS and Jeanie Wills, Respondents.**

**No. 91SC522.**

Supreme Court of Colorado, En Banc.

March 15, 1993.

Clifton, Hook & Bovarnick, P.C., James R. Clifton, Diane M. Carmen, Denver, for petitioner Bath Excavating & Const. Co.

Rothgerber, Appel, Powers & Johnson, Franklin D. O'Loughlin, Patrick Q. Hustead, Denver, for petitioner Hahn Plumbing & Heating, Inc.

Williams & Trine, P.C., J. Conard Metcalf, Boulder, for respondents.

Justice ERICKSON delivered the Opinion of the Court.

In *Wills v. Bath Excavating & Construction Co.*, 829 P.2d 405 (Colo.App. 1991), the court of appeals reversed the trial court's order granting summary judgment in favor of the petitioners, Bath Excavating and Construction Company (Bath) and Hahn Plumbing and Heating, Inc. (Hahn), and remanded for trial. The court of appeals found that the trial court erred in concluding that the petitioners owed no common-law duty of care to Norman Wills, the respondent in this personal injury action, and in finding that a "fireman's rule" barred Wills from recovery. We granted certiorari and now affirm, and return this case to the court of appeals with directions to remand for further proceedings consistent with this opinion.

I

On November 4, 1986, Bath was searching for underground water pipes pursuant to the direction of Hahn, who had been employed to reroute a water service line on a vacant lot. While using heavy equipment, Bath ruptured a water main line owned by the City of Fort Collins. The rupture released a stream of high-pressure water that enlarged and filled the excavation.

Bath called the Fort Collins Water Department to shut off or repair the ruptured water main. A water department crew arrived, and after taking charge of the repair operation, increased the size of the excavation. Wills, a member of the crew, attempted to plug the leak. While standing

in the excavation, Wills was injured when he was struck by sliding mud.

Wills filed an action against the petitioners, alleging that the negligence of the petitioners in severing the water main resulted in his injuries.[1] The petitioners moved for summary judgment, asserting that they owed no legal duty to Wills in his capacity as a city employee.[2] The trial court granted the motion based on its separate conclusions that a fireman's rule barred recovery by Wills and that the petitioners owed no common-law duty to Wills. The court of appeals reversed the trial court on both issues and remanded for trial. We granted certiorari and now affirm.

## II

The petitioners claim that the trial court properly entered summary judgment because a fireman's rule is viable in Colorado and encompasses a city public works employee. Based on such a rule, the petitioners assert that they owed no legal duty to Wills. While we hold that *Lunt v. Post Printing & Publishing Co.*, 48 Colo. 316, 110 P. 203 (1910), and subsequent Colorado case law do not foreclose recovery in this case, we decline to determine whether Colorado should judicially adopt a no-duty fireman's rule in this case.

### A

In the early cases involving fire fighters who were injured on a landowner's premises while discharging their duty, courts typically analyzed the issue of liability based on the common-law status categories of entrants upon the property of another— invitee, licensee, or trespasser. *See Kreski v. Modern Wholesale Elec. Supply Co.*, 429 Mich. 347, 415 N.W.2d at 178, 183 (1987); *Krause v. United States Truck Co.*, 787 S.W.2d 708, 711 (Mo.1990). Courts generally held that fire fighters who entered onto premises in the discharge of their duties were licensees to whom the owner or occupant owed only a duty to refrain from willfully and wantonly injuring them. *Kreski*, 415 N.W.2d at 183; *see generally* Larry D. Scheafer, Annotation, *Liability of Owner or Occupant of Premises to Fireman Coming Thereon in Discharge of His Duty*, 11 A.L.R.4th 597, 601– 02 (1982 & 1992 Supp.).

Later courts recognized, however, that fire fighters do not fit precisely within the common-law categories of invitee or licensee. *See Krause*, 787 S.W.2d 708; *Krauth v. Geller*, 31 N.J. 270, 157 A.2d 129, 131 (1960).[3] Because of the inherent limitations of accurately fitting fire fighters into traditional concepts of landowner liability, courts began to adopt a no-duty "fireman's rule." *Krauth*, 157 A.2d at 131.[4] Courts recognized that because fire fighters are trained and paid to provide services, the law imposes *no duty* on the landowner to exercise reasonable care to prevent the

---

**1.** Wills's wife joined the action asserting a claim for the loss of the services, society, companionship, and consortium of her husband.

**2.** In its initial motion for summary judgment, Hahn asserted that "although the issue is novel in Colorado, it is a longstanding rule that a paid public safety officer has no cause of action against one whose negligence caused the incident in which he was injured." Hahn characterized the rule as a "fireman's rule" which was based on the principle that the law imposes no duty on an owner or possessor of property to exercise reasonable care to prevent the event or actions that creates the need for the special services of a public safety officer. Hahn stated that the fireman's rule was recognized by numerous other jurisdictions and should be adopted in Colorado.

Wills responded in his opposition to summary judgment that Colorado had in fact already adopted a fireman's rule in *Lunt v. Post Printing & Publishing Co.*, 48 Colo. 316, 110 P. 203 (1910). This underlying premise was subsequently accepted by the petitioners, the trial court, and the court of appeals.

**3.** Numerous courts have also agreed with *Krauth*'s conclusion that a fire fighter who enters the premises does not fit with the common-law classifications but is *sui generis*. *See, e.g., Carpenter v. O'Day*, 562 A.2d 595 (Del.Super.), *aff'd*, 553 A.2d 638 (Del.1988); *Buren v. Midwest Indus., Inc.*, 380 S.W.2d 96 (Ky.1964); *Pearson v. Canada Contracting Co.*, 232 Va. 177, 349 S.E.2d 106 (1986).

**4.** The seminal case that signaled the change of rationale from premises liability to a "no-duty" rule supported by principles of assumption of the risk and public policy was *Krauth*. *See Kreski*, 415 N.W.2d at 184.

event or actions that creates the need for the fire fighter's services. *See Krauth,* 157 A.2d at 131 (stating that "in terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid"); *see, e.g., Farmer v. Union Oil Co.,* 75 Cal.App.3d 42, 141 Cal. Rptr. 848 (1977); *Kreski,* 415 N.W.2d at 178; *Krause,* 787 S.W.2d at 711–12.

In fact, the modern-day fireman's rule is misnamed. Although the "no-duty" fireman's rule originally barred tort claims by fire fighters who were injured while fighting a fire against persons whose negligence caused the fire, it has been expanded to include police officers. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 61, at 430–31 (5th ed. 1984); *see, e.g., Furstein v. Hill,* 218 Conn. 610, 590 A.2d 939, 945 (1991) ·(adopting fireman's rule that encompasses police officers); *Berko v. Freda,* 93 N.J. 81, 459 A.2d 663 (1983) (extending fireman's rule to police officers).[5] The fireman's rule only applies to bar suit by a fire fighter or a police officer injured in the performance of his or her duty. *Rosa v. Dunkin' Donuts,* 122 N.J. 66, 583 A.2d 1129, 1134 (1991).

In adopting a fireman's rule, courts have ·occasionally used the language "safety officers," while simultaneously indicating that the term only applies to fire fighters and police officers. *See, e.g., Furstein,* 590

A.2d at 943–45; *Pottebaum v. Hinds,* 347 N.W.2d 642, 645 (Iowa 1984); *Kreski,* 415 N.W.2d at 189. However, to date, no jurisdiction has adopted a "public safety worker rule." [6]

The no-duty fireman's rule is grounded in primary assumption of the risk, public policy considerations, or a combination of both factors. *See, e.g., Carpenter v. O'Day,* 562 A.2d 595 (Del.Super.), *aff'd,* 553 A.2d 638 (Del.1988); *Winn v. Frasher,* 116 Idaho 500, 777 P.2d 722 (1989); *Kreski,* 415 N.W.2d at 183; *Krause,* 787 S.W.2d at 711–12. One rationale offered to support the fireman's rule suggests that no duty is owed because safety officers are employed, trained, and paid to confront dangerous situations in order to protect the public and undertake their profession with the knowledge that their personal safety is at risk. *Banyai v. Arruda,* 799 P.2d 441, 443 (Colo. App.1990) (citing *Kreski,* 415 N.W.2d at 178).

The court of appeals concluded that Colorado adopted a fireman's rule in *Lunt,* 48 Colo. 316, 110 P. 203, but that we effectively rejected the fireman's rule in *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971). *See Wills,* 829 P.2d at 408–09. To determine whether recovery by Wills is foreclosed in this case, we review *Lunt* and *Mile High Fence Co.*

---

**5.** Some jurisdictions have also used the underlying rationale of the fireman's rule to create a "professional rescuer's rule" that bars certain types of negligence actions by a paid rescuer. *Maltman v. Sauer,* 84 Wash.2d 975, 530 P.2d 254 (1975) (applying rescue doctrine to army helicopter pilot); *see also Gillespie v. Washington,* 395 A.2d 18 (D.C.Ct.App.1978) (applying rescue doctrine to harbor officer injured uprighting defendant's boat); *Black Indus., Inc. v. Emco Helicopters, Inc.,* 19 Wash.App. 697, 577 P.2d 610 (1978) (professional rescue doctrine barred owner of helicopter hired by state to fight forest fire from bringing negligence action).

**6.** Modern-day courts when facing the question of the liability of fireman, have either adopted a fireman's rule that covers fire fighters and have later extended the rule to include police officers or have adopted a fireman's rule that encompasses both fire fighters and police officers. In adopting the fireman's rule, some courts have occasionally used the term "safety officer" to refer to fire fighters and police officers. How-

ever, no court has read this language as creating a "public safety worker rule" or has applied the fireman's rule to a municipal public works employee.

The petitioners do not cite any case addressing the liability of a landowner to any other type of public employee in which any court had adopted a fireman's rule that precludes liability based on the status of the individual as a public-sector employee. The cases cited in discussion of the "public safety worker rule" are primarily cases that have involved fire fighters or police officers and have limited the scope of the rule accordingly. In other instances, jurisdictions have refused to extend the underlying rationale of the fireman's rule beyond fire fighters and police officers. *See, e.g., Kowalski v. Gratopp,* 177 Mich.App. 448, 442 N.W.2d 682 (1989) (refusing to extend fireman's rule to paramedic); *Krause,* 787 S.W.2d at 711 (refusing to extend fireman's rule to ambulance attendant).

### B

In *Lunt*, a fire fighter, answering an alarm to extinguish what mistakenly appeared to be a fire, inhaled nitric acid fumes and subsequently died. *Lunt*, 48 Colo. at 318–19, 110 P. at 203–04. The wife of the deceased fire fighter brought a negligence action against the landowner, alleging that by calling the fire department, the landowner invited the fire fighter onto the premises and was liable for not warning the fire fighter of the unsafe condition that existed thereon. *Id.* at 322, 110 P. at 205. The question presented for our review in *Lunt* concerned the common-law status of a fire fighter who entered onto a landowner's premises in the discharge of his duty. *Id.* at 323, 110 P. at 205.

*Lunt* addressed the common-law classifications of licensees and invitees and the respective duties owed by a landowner. Following contemporary commentators and the decisions of a number of other jurisdictions, *Lunt* classified a fire fighter as a licensee. *Id.* at 323–24, 110 P. at 205–06. Accordingly, *Lunt* resolved the issue by concluding that the duty owed by a landowner to a licensee did not include warning of hidden dangers. *Id.* at 329–30, 110 P. at 207 (citing *Watson v. Manitou & Pikes Peak Ry. Co.*, 41 Colo. 138, 92 P. 17 (1907)). *Lunt* did not adopt a per se rule that landowners owed no duty to a fire fighter but merely held that a landowner owed a fire fighter the duty owed to a licensee.[7]

Until 1971, a landowner's liability in Colorado continued to be based exclusively on whether the injured party was classified as an invitee, licensee, or trespasser, and on the corresponding duties owed to each. However, the common-law scheme governing landowner's liability was abolished by

*Mile High Fence Co.*, 175 Colo. 537, 489 P.2d 308.

In *Mile High Fence Co.*, a police officer brought a negligence action against a fence company. While on patrol, the police officer was injured when he stepped into a post hole that the fence company had dug on private property. *Mile High Fence Co.* held that classification of an injured party as a trespasser, licensee or invitee was not determinative of the degree of care owed by a landowner or occupant. *Id.* at 548, 489 P.2d at 314. In specifically overruling *Lunt*, *Mile High Fence Co.* concluded that while the facts giving rise to a person's status were relevant to the issue of liability, they were only one factor. *Id.* at 548, 489 P.2d at 314–15. Accordingly, *Mile High Fence Co.* affirmed the trial court's judgment in favor of the police officer.

In 1986, the General Assembly enacted section 13–21–115, 6A C.R.S. (1986), to statutorily govern premises liability and to resurrect the common-law classification scheme that *Mile High Fence Co.* laid to rest. *See Gallegos v. Phipps*, 779 P.2d 856, 861 (Colo.1989). However, *Gallegos* held that the premises liability statute violated federal and state constitutional guarantees of equal protection and was of no legal effect. The General Assembly subsequently amended section 13–21–115 in 1990. *See* § 13–21–115, 6A C.R.S. (1992 Supp.).[8]

### C

▪ In our view, *Lunt* and its progeny do not foreclose Wills from bringing a negligence action against the petitioners. Neither *Lunt* nor any subsequent case expressly adopted a fireman's rule providing that a landowner or occupant owes *no duty* to public employees because of their public-

---

7. *Lunt* did not preclude recovery because the defendant owed no duty of care to a fire fighter but rather barred recovery because the defendant did not breach the duty owed to a licensee, who happened to be a fire fighter.

 Unlike modern cases which adopted a no-duty fireman's rule, *Lunt* is not framed in terms of implied assumption of the risk or public policy considerations. Instead, the analysis of *Lunt* focused primarily on the common-law classifi-

cations of the injured party and is similar to that employed by other contemporary courts. *See, e.g., Gibson v. Leonard*, 143 Ill. 182, 32 N.E. 182 (1892); *Beehler v. Daniels*, 19 R.I. 49, 31 A. 582 (1895).

8. The parties agree that section 13–21–115, as amended, does not apply to this action because it became effective after the action was commenced.

sector employment.[9] Instead, *Lunt* precluded recovery by a fire fighter based on his status as a licensee.

■ *Mile High Fence Co.* clearly overruled *Lunt* insofar as *Lunt* held that the common-law status of a public employee as a trespasser, licensee, or invitee determined what duty was owed. To that extent, we agree that the rule of no liability to firemen announced in *Lunt* does not foreclose recovery by Wills. Moreover, we do not read *Mile High Fence Co.* as either rejecting or adopting a no-duty fireman's rule.

The petitioners contend, however, that the rationalizations emphasizing public policy considerations and primary assumption of the risk justify the imposition of a no-duty fireman's rule that would encompass a water department employee. Wills counters that there is no need for a no-duty fireman's rule because the rules governing a property owner or occupier's duty to exercise care provide the proper method for analyzing recovery by public employees for negligently caused injuries.

We recognize that the fireman's rule is also the subject of debate in other jurisdictions, although the majority has adopted a no-duty fireman's rule. *Compare Kreski,* 415 N.W.2d 178 (adopting fireman's rule) *with Christensen v. Murphy,* 296 Or. 610, 678 P.2d 1210, 1217 (1984) (abrogating fireman's rule).[10] We further note that the no-duty fireman's rule has been adopted by jurisdictions that have abolished the common-law status categories and also by jurisdictions that have statutorily retained the common-law classification system.

■ However, we are not inclined to sua sponte adopt a no-duty fireman's rule in

this case because we are convinced that the underlying rationale of cases from other states that have adopted such a rule would not extend to a water department worker. We are aware of no jurisdiction that has adopted a "public safety worker rule" stating that a landowner owes no duty to a public employee simply because they work in the public sector. Moreover, the jurisdictions that have adopted a no-duty fireman's rule generally limit the rule to fire fighters and police officers. *See, e.g., Furstein,* 590 A.2d at 945 (limiting rule to fire fighters and police officers); *Pottebaum,* 347 N.W.2d at 645 (same); *Kreski,* 415 N.W.2d at 189 (same); *Krause,* 787 S.W.2d at 711 (stating that the reasons for the application of the fireman's rule to fire fighters and police officers do not apply to all public employees whose duties take them to the scene of an emergency); *see also Thomas v. Pang,* 72 Haw. 191, 811 P.2d 821, 825 (1991) (recognizing that the policy considerations that persuaded the court to adopt the fireman's rule supported a separate classification of fire fighters from other public employees).

In limiting the fireman's rule to fire fighters and police officers, *Kreski* stated:

In sum, *fire fighters and police officers are different than other employees whose occupations may peripherally involve hazards.* Safety officers are employed, specially trained, and paid to confront dangerous situations for the protection of society. They enter their professions with the certain knowledge that their personal safety is at risk while on duty. Property owners cannot reasonably predict visits by safety officers

---

9. In fact, in *Banyai v. Arruda,* 799 P.2d 441 (Colo.App.1990), the court of appeals implicitly recognized that Colorado has not adopted a no-duty fireman's rule. In *Banyai,* the trial court dismissed a negligence action brought by a sheriff's officer based on the fireman's rule.

In reversing, the court of appeals did not cite to *Lunt* as establishing a no-duty fireman's rule. Instead, *Banyai* concluded that, "[a]rguably, th[e fireman's] rule has been rejected by implication in this jurisdiction. *See Rhea v. Green,* 29 Colo. App. 19, 476 P.2d 760 (1970). Even if it has not, we decline to adopt the rule here." *Id.* at 443.

10. The fireman's rule also has been the subject of considerable commentary. *See, e.g.,* Benjamin K. Riley, Comment, *The Fireman's Rule: Defining its Scope Using the Cost–Spreading Rationale,* 71 Cal.L.Rev. 218 (1983); Note, *Assumption of the Risk and the Fireman's Rule,* 7 Wm. Mitchell L.Rev. 749 (1981); Richard D. Zimmerman, Comment, *Negligence Actions by Police Officers and Firefighters: A Need for a Professional Rescuers Rule,* 66 Cal.L.Rev. 585 (1978); Stacey Stutzman, Note, *Landowner's Liability to Injured Firefighters in Illinois,* 27 DePaul L.Rev. 137 (1977).

or control their activities while on the premises.

*Kreski,* 415 N.W.2d at 178 (emphasis added).

*Berko* explained the limitation to fire fighters and police officers as follows:

Governmental entities maintain police and fire departments in anticipation of those inevitable physical perils that burden the human condition, whereas most public employment posts are created not to confront dangers that will arise but to perform some other public function that may incidentally involve risk.

*Berko,* 459 A.2d at 666; *see also Kowalski v. Gratopp,* 177 Mich.App. 448, 442 N.W.2d 682 (1989) (refusing to extend fireman's rule to paramedic); *Krause,* 787 S.W.2d at 708 (refusing to extend fireman's rule to ambulance attendant).[11] In our view, there is a significant difference between the responsibilities and duties of· a water department employee and a fire fighter or a police officer, and we do not believe that the underlying rationale of the cases from other jurisdictions that have adopted a fireman's rule would extend to Wills.

We express no view on the question of whether Colorado should judicially adopt a no-duty fireman's rule. Instead, we limit our decision in this case to the conclusion that Wills is not foreclosed from asserting a negligence action based on the reasoning of *Lunt* and subsequent case law. However, our determination that Wills is not foreclosed from asserting a negligence claim is not dispositive of this case. Summary judgment for the petitioners is appropriate if Wills cannot establish that the petitioners owed him any common-law duty.

III

Wills asserts that the petitioners, Bath and Hahn, breached a common-law duty owed to him by rupturing the water line. He claims that the petitioners' actions constituted active negligence.[12] The trial court, however, concluded that the petitioners owed no duty to Wills because "at the time of Wills' alleged injury, [the petitioners] were no longer in control of the premises, nor was the work being performed in their charge." In our view, the trial court erred by failing to analyze the question of whether a duty existed prior to the time of the injury.

A

 Whether a particular defendant owes a legal duty to a particular plaintiff, as well as the scope of the duty, are questions of law for a court to resolve. *Greenberg v. Perkins,* 845 P.2d 530, 536 (Colo. 1993); *Mile High Concrete, Inc. v. Matz,* 842 P.2d 198, 202–03 (Colo.1992). In determining whether to recognize a duty in a particular case, several factors are relevant to a court's consideration. These factors include the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor. *Greenberg,* at 536; *Taco Bell, Inc. v. Lannon,* 744 P.2d 43, 50 (Colo.1987).

 No one factor is controlling and other considerations may also be relevant in determining whether a duty exists. *Greenberg,* at 536–37; *Perreira v. State,* 768 P.2d 1198, 1209 (Colo.1989). Essentially,

---

**11.** Prosser suggests that "the most legitimate basis for the distinction lies in the fact that firemen and policemen are likely to enter at unforeseeable times, upon unusual parts of the premises, and under circumstances of emergency, where care in looking after the premises, and in preparation for the visit, cannot reasonably be looked for." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 61, at 431–32 (5th ed. 1984). This justification does not apply to foreclose a plaintiff such as Wills from recovery.

**12.** *University of Denver v. Whitlock,* 744 P.2d 54 (Colo.1987), recognized that:

In determining whether a defendant owes a duty to a particular plaintiff, the law has long recognized a distinction between action and a failure to act—"that is to say, between active misconduct working positive injury to others [misfeasance] and passive inaction or a failure to take steps to protect them from harm [nonfeasance]."

*Id.* at 57 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56, at 373 (5th ed. 1984)).

the question is one of fairness under contemporary standards, that is, whether reasonable persons recognize and agree that a duty exists. *Greenberg,* at 536–37; *University of Denver v. Whitlock,* 744 P.2d 54, 57 (Colo.1987).

■ Once a court has determined the existence of a duty, the court must consider the scope of the duty and define the applicable standard of care against which to measure the defendant's conduct. *Greenberg,* at 536–37. The finder of fact then must determine whether the defendant breached that duty. *Id.* at 536–37; *Taco Bell,* 744 P.2d at 50.

### B

■ In this case, we are satisfied that application of the relevant considerations warrants the imposition of a common-law duty on the part of the petitioners to act with reasonable care to avoid injury in excavating to lay water lines.[13]

An element of risk is present in this case based on the potential that water lines will be ruptured during excavation. The unrestrained flow of water poses a danger to the property and physical well-being of individuals, in addition to disrupting a vital service. Moreover, it is foreseeable that an underground water line may be severed during excavation with heavy equipment,

that either public or private sector employees will be called to repair a ruptured water line, and that the individuals involved in the repair may be injured during the repair.

Finally, neither the magnitude of the burden of guarding against injury or harm, nor the consequences of placing the burden on the petitioners are so great that it would be improper to find that a duty existed in this case. In our view, it is fair to require the petitioners to bear an increased burden in terms of cost because they will profit from the benefit of the excavation. Imposing a duty in these situations would not deter individuals from requesting emergency help, but instead would result in more cautious procedures and fewer accidents.[14]

Based on the foregoing considerations, we find that the petitioners owed a common-law duty to exercise reasonable care to avoid injury to Wills in the excavation of water lines. Because the finder of fact must determine whether the petitioners breached that duty, however, the trial court erred in entering summary judgment in favor of the petitioners. *See Greenberg,* at 531 (noting that summary judgment is warranted only by a clear showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law).[15]

---

**13.** *Greenberg* noted that "we have recognized that people owe a duty to use reasonable care with regard to their affirmative conduct and that such a duty extends to all who may foreseeably be injured if the conduct is negligently carried out." *Greenberg,* at 536–37.

**14.** We disagree with the petitioners' assertion that imposing a duty "would be tantamount to encouraging similarly situated parties, in the event of an emergency, to avoid calling on the expertise of public safety officers such as the local water department, police or fire department, for fear that these experts would be injured from carrying out their duties."

The argument that tort liability might deter cries of distress has been rejected as "surely preposterous rubbish." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 61, at 431 (5th ed. 1984); *see also Christensen v. Murphy,* 296 Or. 610, 678 P.2d 1210, 1217 (1984) (dismissing argument).

**15.** Recognizing that the petitioners owed a duty to Wills does not amount to the imposition of liability as a matter of law. To establish the

petitioners' liability, the trier of fact must find a breach of duty to Wills, causation, and damages. *See Largo Corp. v. Crespin,* 727 P.2d 1098, 1102 (Colo.1986).

Even though foreseeability is necessarily considered in determining the scope and existence of a duty, the issues of whether the duty has been breached remain to be determined by the trier of fact. *Greenberg,* at 538–39 n. 7 (citing *Taco Bell,* 744 P.2d at 50). In addition, "the existence of proximate cause is a question of fact for the trier of fact and only in the clearest of cases, where reasonable minds can draw but one inference from the evidence does the question become one of law to be determined by the court." *Largo,* 727 P.2d at 1103. Accordingly, the trier of fact must determine whether the rupturing of the water line by the petitioners was a proximate cause of Wills's injuries, including whether there were superseding causes.

Moreover, we note that in determining comparative fault, a public employee's special skills, training, and experience may be relevant, although these factors do not justify a conclusion that the petitioners owed no duty to Wills. In

## IV

We hold that, in this case, the petitioners owed a common-law duty to exercise reasonable care to avoid injury to Wills in the excavation of water lines. To the extent that *Lunt* precluded recovery by a public employee while on the property of another based on the injured employee's common-law status, we agree with the court of appeals that *Lunt* was overruled by *Mile High Fence Co.* and does not foreclose recovery by Wills. Moreover, neither *Lunt* nor any subsequent case expressly adopted a no-duty fireman's rule that would foreclose recovery in this case. Accordingly, we affirm the judgment of the court of appeals and return this case to the court of appeals with directions to remand to the district court for further proceedings consistent with this opinion.

VOLLACK, J., dissents and ROVIRA, C.J., joins in the dissent.

### Justice VOLLACK dissenting:

The majority declines to "sua sponte adopt a no-duty fireman's rule in this case because [it is] convinced that the underlying rationale of cases from other states that have adopted such a rule would not extend to a water department worker." Maj. op. at 12. I disagree. Rather, I find that the rationales supporting the acceptance and application of a public safety worker rule in other jurisdictions dictate that we adopt and apply such a rule in the present case. Additionally, I find that the majority's recognition of a duty owed in this case amounts to imposition of liability as a matter of law. I respectfully dissent.

### I.

We granted certiorari to determine "whether the court of appeals erred in concluding that the 'fireman's rule' has been rejected in Colorado, and, if so, whether respondent Norman Wills, a city water department employee, is subject to the [rule]." A discussion of the rationales on which other state courts rely as a contemporary basis for the public safety worker rule reveals that this court should adopt and apply a public safety worker rule in this case. Additionally, adoption of such a rule is not inconsistent with this court's holding in *Mile High Fence Co. v. Radovich*, 175 Colo. 537, 489 P.2d 308 (1971). I would conclude that a public safety worker rule would encompass the respondent Norman Wills (Wills), a Water Systems Operator whose job duties at the time of the accident were to repair ruptured water lines.

### A.

### The Public Safety Worker Rule

The "fireman's" rule prevents professional fire fighters from "recover[ing] damages from a private party for injuries he [or she] sustained during the course of putting out a fire even though [a] private party's negligence may have caused the fire and injury." *Thomas v. Pang*, 72 Haw. 191, 811 P.2d 821, 823 (1991). It is well settled that a majority of jurisdictions have adopted some form of this rule. *Bycom Corp. v. White*, 187 Ga.App. 759, 371 S.E.2d 233, 234 (1988) (stating that the fireman's rule is universally accepted); *Thomas*, 811 P.2d at 823 (stating that a majority of jurisdictions that have considered the rule have adopted some version of it); *Winn v. Frasher*, 116 Idaho 500, 777 P.2d 722, 724 (1989) (recognizing that a great majority of states accept the rule); *Pottebaum v. Hinds*, 347 N.W.2d 642, 644 (Iowa 1984) (stating that almost all jurisdictions have adopted some version of the rule); *Calvert v. Garvey Elevators, Inc.*, 236 Kan. 570, 694 P.2d 433, 436–38 (Kan. 1985) (noting that almost all jurisdictions have adopted some version of the rule); *Kreski v. Modern Wholesale Elec. Supply Co.*, 429 Mich. 347, 415 N.W.2d 178, 183 (1987) (stating that an overwhelming number of courts have favored adopting the rule); *Rosa v. Dunkin' Donuts of Passaic*, 122 N.J. 66, 583 A.2d 1129 (1991) (acknowledging that the rule is followed throughout the country); *Mignone v. Fieldcrest Mills*,

addition, Wills' recovery may be reduced by the doctrine of assumption of risk. *See* § 13-21-111.7, 6A C.R.S. (1987); *Harris v. The Ark*, 810 P.2d 226 (Colo.1991).

556 A.2d 35, 37–40 (R.I.1989) (stating that the rule is almost universally accepted across the nation); *see Von Beltz v. Stuntman, Inc.,* 207 Cal.App.3d 1467, 255 Cal. Rptr. 755, 761 (1989) (relying on *Hubbard v. Boelt,* 28 Cal.3d 480, 169 Cal.Rptr. 706, 620 P.2d 156 (1980)); *Furstein v. Hill,* 218 Conn. 610, 590 A.2d 939, 942–45 (1991); *Young v. Sherwin–Williams Co.,* 569 A.2d 1173, 1175–79 (D.C.1990); *Lanza v. Polanin,* 581 So.2d 130, 131–33 (Fla.1991); *Coglianese v. Mark Twain Ltd. Partnership,* 171 Ill.App.3d 1, 120 Ill.Dec. 849, 850, 524 N.E.2d 1031, 1032, *appeal denied,* 122 Ill.2d 571, 125 Ill.Dec. 213, 530 N.E.2d 241 (1988); *Koehn v. Devereaux,* 495 N.E.2d 211, 215 (Ind.Ct.App.1986); *Hawkins v. Sunmark Indus., Inc.,* 727 S.W.2d 397, 400 (Ky.1986); *Flowers v. Rock Creek Terrace Ltd. Partnership,* 308 Md. 432, 520 A.2d 361, 364–69 (1987); *Griffiths v. Lovelette Transfer Co.,* 313 N.W.2d 602, 604–05 (Minn.1981); *Krause v. U.S. Truck Co.,* 787 S.W.2d 708, 711–13 (Mo.1990); *Moravec v. Moravec,* 216 Neb. 412, 343 N.W.2d 762, 764 (Neb.1984); *Steelman v. Lind,* 97 Nev. 425, 634 P.2d 666, 667 (1981); *Santangelo v. State,* 71 N.Y.2d 393, 526 N.Y.S.2d 812, 813–14, 521 N.E.2d 770, 771–72 (1988), *superseded by statute as stated in Sharkey v. Mitchell's Newspaper Delivery, Inc.,* 165 A.D.2d 664, 560 N.Y.S.2d 140 (1990); *Maltman v. Sauer,* 84 Wash.2d 975, 530 P.2d 254, 257 (1975).

The rule originated in common-law concepts of landowner liability, under which courts determined that fire fighters held the status of bare licensees. As such, landowners owed only a duty not to wilfully or wantonly injure fire fighters. *See Furstein,* 590 A.2d at 943 (quoting *Dini v. Naiditch,* 20 Ill.2d 406, 413, 170 N.E.2d 881 (1960)) ("[T]he rule had its origins in a social system in which 'the landowner was sovereign within his own boundaries' and owed a licensee only the duty not to injure him wilfully or wantonly."); *Young,* 569 A.2d at 1175 (noting that the rule originally developed in the context of landowner liability law); *Thomas,* 811 P.2d at 823 (noting that, historically, the rule was explained in the context of landowner liability, where firemen were classified as licensees); *Winn,* 777 P.2d at 724 (noting that landowners only owe fire fighters a duty not to act wilfully or wantonly); *Flowers,* 520 A.2d at 364 (stating that the history of the rule focused on the status of fire fighters on the premises); *Kreski,* 415 N.W.2d at 183 (stating that the rule premised liability on the basis of traditional status categories of entrants upon property of another); *Krause,* 787 S.W.2d at 711 (noting that the early cases involved traditional status categories of entrance upon the property of another); *Steelman,* 634 P.2d at 667 (stating that the origins of the rule stem from the duty owed by an owner or occupier of land to one who enters upon the land); *Santangelo,* 526 N.Y.S.2d at 813, 521 N.E.2d at 771 (recognizing the common-law rationale for the rule as based on fire fighters' status as licensees); *Mignone,* 556 A.2d at 37–38 (recognizing that early cases were premised on antiquated property concepts of entrant classifications). Thus, the Iowa Supreme Court has stated:

> Historically, the rule arose in the context of the differing duties owed by a landowner or occupier to individuals coming on his land. Since a policeman or fireman was privileged to enter land pursuant to his public duties and could come on property any place or time, courts classified them as bare licensees and held the only duty owed these public servants was to not wantonly or willfully injure them.

*Pottebaum,* 347 N.W.2d at 644. The common-law paradigm has, however, been rejected as a contemporary basis for the rule, in part because fire fighters no longer fit neatly into the status category of licensees, and because many jurisdictions have abolished entrant classifications as defining the duty of care owed by a landowner. *Furstein,* 590 A.2d at 943; *Thomas,* 811 P.2d at 823; *Pottebaum,* 347 N.W.2d at 644–45; *Flowers,* 520 A.2d at 366–67; *Kreski,* 415 N.W.2d at 183–84; *Krause,* 787 S.W.2d at 711–12; *Mignone,* 556 A.2d at 38.

Courts have in turn recognized that the primary assumption of risk theory and considerations of public policy support adoption of a public safety worker rule. The

primary assumption of risk theory bars public safety workers from filing lawsuits on the ground that they perform work which is inherently hazardous; accordingly, individuals who accept public safety employment assume the risks entailed therein. *Furstein*, 590 A.2d at 943; *Young*, 569 A.2d at 1175; *Gillespie v. Washington*, 395 A.2d 18, 20 (D.C.1978); *Bycom Corp.*, 371 S.E.2d at 234; *Thomas*, 811 P.2d at 824; *Winn*, 777 P.2d at 724; *Pottebaum*, 347 N.W.2d at 645; *Calvert*, 694 P.2d at 437; *Flowers*, 520 A.2d at 367–68; *Kreski*, 415 N.W.2d at 184–85; *Griffiths*, 313 N.W.2d at 605; *Krause*, 787 S.W.2d at 711–12; *Rosa*, 583 A.2d at 1131; *Santangelo*, 526 N.Y.S.2d at 813, 521 N.E.2d at 771; *Mignone*, 556 A.2d at 38.

Courts have additionally premised contemporary acceptance of a public safety worker rule on considerations of public policy. In this context, courts have identified public policy as encompassing several rationales: (1) The public hires, trains, and compensates public safety workers to contend with dangerous situations; the public should not be liable for injuries to public employees resulting from the very work they were hired to perform; (2) Society has acknowledged the hazardous nature of the work performed by public safety workers through specially enacted benefits such as worker's compensation; (3) Permitting public safety officers to recover in tort imposes a duplicative burden on taxpayers who already pay taxes in order to receive such services; (4) The rule prevents a proliferation of lawsuits; and (5) The rule encourages rather than discourages citizens to summon public safety services when needed. *Furstein*, 590 A.2d at 943–45; *Young*, 569 A.2d at 1178–79; *Gillespie*, 395 A.2d at 20; *Lanza*, 581 So.2d at 132; *Bycom Corp.*, 371 S.E.2d at 234–35; *Thomas*, 811 P.2d at 824–25; *Winn*, 777 P.2d at 725; *Pottebaum*, 347 N.W.2d at 645–46; *Calvert*, 694 P.2d at 438; *Hawkins*, 727

S.W.2d at 400; *Flowers*, 520 A.2d at 368; *Kreski*, 415 N.W.2d at 186–89; *Krause*, 787 S.W.2d at 712; *Steelman*, 634 P.2d at 667; *Rosa*, 583 A.2d at 1131–33; *Santangelo*, 526 N.Y.S.2d at 813–14, 521 N.E.2d at 771–72; *Mignone*, 556 A.2d at 39.

At least one court has recognized that the rule is premised on common sense, insofar as the rule prevents public safety officers from recovering damages in tort for performance of their jobs, which they were already obligated to perform and for which they previously received compensation. *Kreski*, 415 N.W.2d at 183 ("The fireman's rule is based on practicability and common sense.... [The rule states] that a fire fighter or police officer may not recover damages from a private party for negligence in the creation of the reason for the safety officer's presence.").

In determining whether a contemporary version of the rule should be adopted and operate to bar a public safety worker from filing suit, many courts have examined both the nature of the service provided by the public safety officer's work, and the relationship of the officer to the public.[1] *Thomas*, 811 at 824–25 (finding that fire fighters provide a service that entails confronting danger, and that the public relies on them to do so); *Winn*, 777 P.2d at 725 (relying on *Kreski*, 415 N.W.2d at 186–87); *Flowers*, 520 A.2d at 368; *Kreski*, 415 N.W.2d at 186 ("The policy arguments for adopting a fireman's rule stem from the nature of the service provided by fire fighters and police officers, as well as the relationship between these safety officers and the public they are employed to protect."). In concluding that a contemporary version of the rule applied to fire fighters and police officers, the Missouri Supreme Court stated that the rule applied to "the official whose *primary* public duty is to confront danger." *Krause*, 787 S.W.2d at 713.

The public policy rationales discussed provide a useful backdrop against which to

---

1. I am not persuaded that a public safety worker rule should only be triggered when a public servant bearing the literal job title of either "police officer" or "fire fighter" has filed suit. Conversely, the complexity of contemporary society indicates that a better-reasoned approach to identifying the cases in which the rule appropriately applies turns on evaluation of the service performed by the public safety worker and on consideration of whether private entities perform the same service.

evaluate whether Colorado should endorse a contemporary version of the public safety worker rule. Analysis of public policy rationales and the factors upon which courts determine the existence of a duty dictates that a public safety worker rule should be adopted in the present case.

### B.

### Colorado Law

As the majority notes, in 1910, this court classified fire fighters as licensees when a surviving spouse filed an action against a building occupant after the deceased spouse, a fire fighter, sustained fatal injuries while responding to an alarm in the building. *Lunt v. Post Printing and Publishing Co.*, 48 Colo. 316, 110 P. 203 (1910). This court recognized that "[t]he firemen are on the premises, not in discharge of any private duty due from them to the occupant, but of a public duty which they owe to the public." *Id.* at 325, 110 P. at 206. This court concluded that the deceased fire fighter entered the building "in the character of a licensee, under circumstances and conditions requiring [the fire fighter's] presence in the discharge of his duties." *Id.* at 329, 110 P. at 207. This court sustained the dismissal of the complaint.

As the majority notes, this court abolished common-law classifications of entrants on land of another in *Mile High Fence Co. v. Radovich*, 175 Colo. 537, 489 P.2d 308 (1971). We premised our rejection of the common-law categories of trespasser, licensee, and invitee in part on the fact that "[r]igid adherence to common law classifications results in the resolution, in many instances, of the owner's liability as a matter of law." *Id.* at 543, 489 P.2d at 312. We reaffirmed our rejection of the common-law categories in *Gallegos v. Phipps*, 779 P.2d 856, 860–61 (Colo.1989), wherein we found that a statute creating categories as a basis of landowner liability violated constitutional guarantees of equal protection. Our consistent rejection of the common-law scheme, however, does not prevent us from endorsing a public safety worker rule in the present case. *See*

*Thomas,* 811 P.2d at 824–25 (noting that Hawaii has abolished the distinctions between classes of entrants upon land, but adopted a rule based on public policy); *Kreski,* 415 N.W.2d at 184 n. 9 (stating that rejection of status categories in no way impedes application of a fire fighter rule); *Mignone,* 556 A.2d at 37–38 (declining to reject fire fighter's rule on ground that court rejected antiquated status categories). Public policy considerations warrant recognition of a public safety worker rule in the present case.

We have consistently recognized that the existence of a duty poses a question of law to be determined by the court. *Connes v. Molalla Transport System, Inc.*, 831 P.2d 1316, 1320 (Colo.1992) (relying on *Casebolt v. Cowan*, 829 P.2d 352, 356 (Colo.1992)); *Observatory Corp. v. Daly*, 780 P.2d 462, 466 (Colo.1989) (relying on *Metropolitan Gas Repair Serv. v. Kulik*, 621 P.2d 313, 317 (Colo.1980)). In evaluating whether to impose a duty, courts consider the practical consequences of placing such a burden on the defendant, and the burden of guarding against the harm caused to the plaintiff. *Connes,* 831 P.2d at 1320. Courts also consider any additional elements disclosed by the particular circumstances of each case. *Id.* " 'No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards—whether reasonable persons would recognize a duty and agree that it exists.' " *Id.* (quoting *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo.1987)). " 'A court's conclusion that a duty does or does not exist is "an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is [or is not] entitled to protection." ' " *Id.* (quoting *University of Denver v. Whitlock*, 744 P.2d 54, 57 (Colo.1987) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 53, at 358 (5th ed. 1984))).

The practical consequences of imposing liability on defendants in actions filed by public safety workers implicate the public policy rationales relied on in other jurisdictions. Imposition of liability discourages

citizens from summoning public safety services. Imposition of liability additionally subjects taxpayers to paying a second time for a service that tax dollars previously funded. Further, those public safety workers who sustain injuries in the course of executing their duties may receive special compensation, such as worker's compensation. The burden of guarding against the harm to the plaintiff-public service worker in this case is best placed on the public safety worker, who is trained to confront the hazards that their safety employment entails.

Public safety workers should be barred from bringing suits in cases where the circumstances underlying the action are the same as those requiring the public safety worker to perform their duties in the first instance. The balance of these factors dictates that we adopt a public safety worker rule in Colorado. The majority, however, declines to address whether we should reach this issue because "such a rule would not extend to a water department worker." Maj. op. at 1146. I would conversely conclude that a public safety worker rule would encompass a Water Systems Operator whose primary duty is to repair ruptured water lines.

### C.

#### The Scope of the Public Safety Worker Rule

In the present case, Wills' supervisor, Terry Popejoy (Popejoy), testified that Wills was a Water Systems Operator, and that water systems operators' job responsibilities are to perform manual repair work on water lines. Popejoy testified that private persons who rupture water lines are legally required to seek the assistance of the City in repairing the line. Popejoy also testified that water systems operators receive training regarding the hazards of excavation of sites, including shoring school, certification testing, and other classes.

Wills' primary public duty, as a Water Systems Operator employed by the City of Fort Collins, is to confront the dangers posed by repairing ruptured water lines.[2] Like fire fighters, employees sharing Wills' public duties are the only parties on whom private persons can rely to repair such lines. In this context, a water systems operator performs a vital and unique role. A public safety worker rule should govern the facts of this case and relieve Bath Excavating from liability, as owing no duty to Wills.

The majority, however, concludes that, based on these facts, Bath Excavating owes Wills a common-law duty "to act with reasonable care to avoid injury in excavating to lay water lines." Maj. op. at 1148. This conclusion imposes liability on landowners under all circumstances where the landowner must rely on the assistance of a public safety worker to respond to an emergency on private land. The public safety worker is summoned precisely for the reason that an emergency exists, and, after arrival, the public safety worker assumes control over the affected private property. The landowner may then be liable for any injuries the public safety worker sustains while on private land. The majority's conclusion prevents this court from examining whether Colorado should adopt a public safety worker rule.

### II.

Accordingly, I dissent and would reverse the court of appeals, and remand the case with instructions to reinstate the district court order granting summary judgment in favor of Bath Excavating.

I am authorized to say that Chief Justice ROVIRA joins in this dissent.

---

**2.** Even the majority concedes that "[t]he unrestrained flow of water poses a danger to the property and physical well-being of individuals, in addition to disrupting a vital service." Maj. op. at 1148.